## LANG ET AL. *vs.* BROWN.

1. A distributee's undivided interest in an unsettled estate may be set apart in equity by his judgment creditor, and subjected to the satisfaction of his demand.

2. But in order to do this, it is indispensably necessary that the Chancellor should proceed to make a final settlement of the administration, and separate the portion of the judgment debtor from the remainder of the estate, before a final decree can be pronounced condemning such portion to the payment of the demand. To this end, the master should take just such an account of the affairs of the administration, as is required to be taken by the Court of Probate on the final settlement of intestate's estate; and when this is done, the Chancellor should direct the estate to be distributed among the parties in interest, in a manner as nearly conformable to that pointed out by the statute for the government of the Courts of Probate as is practicable, and then direct the sale of so much of the portion sought to be charged by the creditor as shall be sufficient to satisfy his demand.

3. When a reference is made to the master, and he disregards the instructions and directions of the Chancellor, or does not furnish in his report the facts necessary to enable the court to proceed to a final decree on the merits of the case, the report should be set aside, even if no exceptions are taken to it.

4. It is the duty of the master to obey the instructions of the Chancellor; and if it is desired that the Chancellor should review his directions, the party supposing himself to be aggrieved by this obedience of the master, may take exceptions, and by this means bring the point again to the attention of the Chancellor. If, on the argument of these exceptions, it should be made to appear that the justice of the case cannot be got at, without an alteration of the decree, in conformity with which the report is made, the Chancellor should direct the report to stand over, and order that portion of the decree containing the erroneous directions to be reheard.

5. It is not competent for the court, upon exceptions, to make an order inconsistent with the decree; from the time the decree is pronounced, all the subsequent proceedings should be consistent with it.

6. When the report of the master is in direct opposition to the original decree, an order of the Chancellor confirming it, may be reviewed in the Appellate Court, without exceptions to the report in the court below.

7. When a bill is filed by a creditor, to subject to the satisfaction of his judgment his debtor's undivided interest in her husband's estate, of which she is administratrix, and to set aside as fraudulent a deed conveying all her interest in the estate to her children, who were the other distributees, to which bill the widow, individually and as administratrix, and the other distributees are made parties defendant, a decree in favor of the complainant which directs "*the defendants*" to pay into court the amount of complainant's judgment, and execution to issue *against them* in default of payment, is erroneous.

8. The second head-note in Brown v. Lang et al., (14 Ala. 719,) corrected.

ERROR to the Chancery Court of Mobile.

Tried before the Hon. J. W. LESESNE.

The bill in this case was exhibited by the defendant in error against Mrs. Lang, in her own right, and as administratrix of Willis Lang, deceased, and the other defendants, as distributees, and heirs at law of said intestate. The object of the bill is three-fold; first, to procure a settlement of the estate of Willis Lang, so as to ascertain and set apart the share to which Mrs. Lang, his widow and administratrix, is entitled; secondly, to charge that share with the payment of the claim of the defendant in error, who is her judgment creditor; and thirdly, to set aside a voluntary deed made by Mrs. Lang to her children, conveying all her interest in her husband's estate to them.

The bill charges, that the value of the personal estate which came to the hands of the administratrix, is $13,000, besides a large and valuable real estate in the city of Mobile, and elsewhere; that the administratrix has made no settlement, but that the estate is ample to pay off all its debts, and leave a large sum for distribution; that complainant has obtained judgment against Mrs. Lang, and an execution on it has been returned, "no property found;" that, to avoid the payment of this debt, she has by deed conveyed to her children, the heirs of Willis Lang, all her right, title and interest in and to the estate of said Willis Lang, and that said deed is fraudulent and void. The bill further charges, that Mrs. Lang refuses to settle in the Orphans' Court, that the amount of her share of the estate may be ascertained. The prayer of the bill is, that she be required to state an account, and make settlement in the Court of Chancery; that her portion of the estate be ascertained, and by the decree of the court subjected to the payment of the complainant's demand, and that the deed to her children be set aside.

The defendants answer, denying that Mrs. Lang is in equity entitled to any portion of the estate, and alleging that she has wasted and misapplied the assets of the estate to the amount of upwards of $10,000, a sum exceeding the value of her distributive portion. They deny all fraud in making the deed to the children, and insist it was made in good faith

by Mrs. Lang, to indemnify them against loss from the waste of the assets by her as administratrix.   To the answers, an account of the assets, expenditures, &c., of the estate under the management of the administratrix, is appended as an exhibit.

The Chancellor, on the first hearing of the case, held, that the lien of the distributees on the distributive portion of Mrs. Lang, arising out of their claim against her for wasting the assets of the estate, was superior to that of Brown, the defendant in error, and must be first satisfied, and offered the complainant an account, to ascertain if there would be any balance due to Mrs. Lang on her portion of the estate of her husband, after accounting to the children for her waste of the assets of the estate ; but he declined setting aside the deed until such account should be taken.

The complainant prosecuted a writ of error from this decree to this court, where it was affirmed, and the case was sent back to the court below for further proceedings on the decree, under the leave given by the Chancellor.

After the case was returned to the court below, the master, upon notice to the parties, proceeded to act on the matters referred to him by the Chancellor, and reported at the April term, 1851.   The order of reference, and decree accompanying it, are in these words: "It is ordered and decreed, that the master take an account of the estate of Willis Lang, deceased, and the amount of assets of said estate wasted or misapplied by Catharine Lang, the administratrix, and of the balance of debt against her, and in favor of said estate, and the value thereof she is entitled to as a distributive share of the same.

He will also take an account of any payments made by Willis Lang to the complainant, in bagging and rope, or otherwise, as stated in the answer.   He will also take an account of the amount due the complainant on his said judgment."

In his report, the master states the sum due complainant to be, $1982\frac{70}{100}$, including interest to the date of his report; that the real estate left by Willis Lang was, at the time of his death, worth $8,000; his personal estate, $18,000; the rents and slave hire to the taking of the account, $5,000; making an aggregate of $31,000.   He reports Mrs. Lang's portion to worth, $5,700.

The report does not show, that the master stated any account current between the administratrix and the estate, from the commencement of her administration to the time of taking the account, so as to show what was the true condition of the estate; he makes no inquiry as to the waste or misapplication of assets by the administratrix, nor does he strike the balence between her and the estate, as required by the order of reference. These portions of the order of reference are wholly disregarded.

The defendants filed exceptions to the action of the master, in taking and reporting the account. They are:

1. "Because, in ascertaining the value of the personal estate, of which Willis Lang died seized and possessed, the master disregarded the appraisement thereof, made by due course of law in the Orphans' Court, in evidence before him by the bill of complaint, and by the answers;

2. Because the master set aside and disregarded said appraisement, on the oath of one witness, who stated his knowledge of the value thereof to be slight;

3. Because the master allowed the said appraised value to be disputed by parol proof;

4. Because it was in proof by Dudley Hubbard, that when the said Lang died, he owed debts to a large amount, which had been discharged by the administratrix, the amount of which debts so paid, in the ascertainment of the dower of the administratrix, Mrs. Lang, was not deducted from the said value of the personal property, nor was any account whatever taken of the same;

5. Because the master failed to take any account of the waste of assets by the administratrix, which is distinctly set out in the answers of the heirs, and admitted by the administratrix, and that he refused to receive said answers as evidence of these acts of waste;

6. Because he refused to consider the accounts A., B. & C. attached as exhibits to the answers, as proof, though they are called for by the prayer of the bill, and are given in response thereto;

7. Because the account was not taken, nor the report made up, according to the directions of the Chancellor;

8. Because the master refused to consider the accounts A.,

B. & C. attached to the answers, when they were not surcharged or falsified, if at all, by more than one witness, who is unsupported by corroborating circumstances;

9. Because the master's report is contrary to the evidence before him upon the matters referred."

These exceptions were severally and collectively overruled by the master, and on an appeal to the Chancellor, were also overruled by him.

At the April term, 1852, the master was, by consent of parties, ordered to report the proof of Hubbard and Lang, witnesses examined before him.

But the view taken of the case renders it unnecessary to note particularly this proof.

On the final hearing, the Chancellor set aside the deed from Mrs. Lang to her children, declaring it to be fraudulent as to the complainant, who is her creditor, and proceeds, "that the defendants pay into court, for the use of the complainant, the sum $1982\frac{70}{100}$, together with interest on $1265\frac{59}{100}$, the principal amount of said sum from the 21st April, 1851, within thirty days of this date, and, in default thereof, that an execution may issue therefor against said defendants in the usual form."

From this decree a writ of error is prosecuted to this court, and the action of the court in overruling the defendants' exceptions to the master's report, and the final decree, are here assigned for error.

J. T. TAYLOR, for plaintiffs in error:

The complainant's evidence, if all true, proves nothing as against the children of Lang. The issue between them and the complainant, may be thus stated: The complainant charges, that the estate of Lang is able to pay all its debts, &c, and have, at the time of filing the bill, a large surplus for distribution; that Mrs. Lang is entitled to a distributive share; that she is indebted to them, and they seek to condemn it. The children, in their answers, deny the charge, and say that there is no fund in hand to which she is entitled; that she has received and spent already much more than she is entitled to as a distributee. Now, what is the proof under this issue? The complainant proves that Mrs. Lang received into her

hands, some fifteen years ago, as administratrix of said estate, a large amount of property; and here all the evidence stops. There is no evidence that she has ever accounted for one cent of this property. Nor does the complainant, who has taken her shoes, even propose to do it; nor does the evidence any where show that there is now one dollar on hand, in reach of the court, subject to a present division. There may have been a surplus on hand, in 1837, before any debts were paid or losses incurred; but can any one answer, from the evidence, where it is now? of what it consists, money, property or doubtful claims? The complainant seems to have forgotten his position in this case; he seems to claim a child's position, and endeavors to charge Mrs. Lang, when, in fact, he has assumed Mrs. Lang's place, and she must account for all these things before he can get her share.

The master should have reported the amount of assets now on hand, subject to division, and of what it consisted. The funds should then have been divided by a fair mode of division, and Mrs. Lang's portion set apart, and sold to pay complainant's debt. But, instead of doing this, they ascertain what ought to be the amount of funds, without any regard to whether it is a real or only an imaginary fund: whether notes or outstanding debts. No final decree could or ought to have been rendered on this report.

The decree in this case is erroneous in another essential. The defendants are ordered to pay this ascertained share of Mrs. Lang, or execution issues against them all; so, the result will be, that if this uncertain surplus the master reports, is not found when the sheriff goes, the children of Lang are not only to lose their interest in the estate, but are to pay the judgment against Mrs Lang out of their own funds.

But, considering this case as the parties seem to have considered it below, the master's report is full of errors. The complainant charges in his bill, that, except from what appears to be an account filed in the Orphan's Court in 1840, he is unable to ascertain the present condition of the estate, and prays that Mrs. Lang be required to state her account as administratrix. In response to this, she states and presents the account exactly as called for. Yet the master refuses to consider this as any evidence whatever, though he is, in sub-

stance, directed so to do by the order of reference, and although the plaintiff stands in Mrs. Lang's shoes, and is bound by her admissions, until some fraud or mistake is shown. 7 Ala. 582; 1 Freeman's Ch. 546; 1 Cow. 742; 4 Ala. 64.

The court erred in setting aside the deed from Mrs. Lang to the children until fraud was proven; the deed must stand good until the full and final settlement takes place, and the effects handed over to the children; for, until then, it cannot be known what devastavit may take place. 4 Ala. 64–6.

P. PHILLIPS, *contra:*

The answers of defendants are not evidence, except when they are strictly responsive to the bill; as when a bill was filed against the separate estate of a married woman, to subject it to the payment of a bond given to the complainant as executor, the answer admitted the execution of the bond, but alleged that, since its execution, she had discovered some errors in the account upon which it was given. The court says the effect of the admission cannot be destroyed by these subsequent statements; of these matters, set up in avoidance of a portion of her bond, her answer is not proof. Forrest and wife v. Robinson, 2 Ala. 216; Br. Bank at Huntsville v. Marshall, 4 ib. 60; Cummings v. McCullough, 5 ib. 324; Carpenter v. Dunn, 6 ib. 718; Powell v. Powell, 10 ib. 900; also, 306; 1 Wash. 224; Payne v. Coyle, 1 Munf. 395; Walker v. Miller, 11 Ala. 1067.

This question is especially referred to in the decision of this case in the Supreme Court, 14 Ala.; and it is said, this question would arise before the master, that is, how far the exhibits would be proof, and could then be determined upon. Supposing, however, an account furnished would be evidence for the administratrix, and still the exhibit offered would not do. It states, for instance, as her credit, "Amount expended on estate, $31,983 64." This is not an account, but the conclusion or result of one. Again: the account or exhibit is scarcely to be credited. Of the sixteen negroes mentioned, whose wages produce $17,282, we find, by the evidence of Lang, that four of them were used for family purposes, so that the account is not true in that particular. Again: by the account filed with the Orphan's Court by Mrs. Lang, 24th January,

1840, which she swears was a true account, we find, that for two years and nine months, she received for hire only $830 93. Allowing the same rate for the succeeding six years and nine months, ($2,039,) and it would only give $2,869 93. And this, also, invalidates the answer.

Again: It is seen that the family all live with Mrs. Lang, who supports and educates them at great expense, and since the filing of the account, it nowhere appears that she has made any charge for this since she filed her account. Again: The answer is invalidated by the allegation, that she made the deed to secure her children against a devastavit, when the proof offered by her own account shows that the estate, at that time, was in her debt. The deed was made 14th June, 1839. The return to the Orphan's Court, 24th January, 1840, shows a balance in her favor of $166 40, and yet the deed is said to have been made to protect the heirs against her devastavit.

But this proof of devastavit, by the rules of evidence, is thrown upon the defendant. It is the affirmative which she is bound to prove. The answer carefully conceals all facts or circumstances by which the truth of the allegation might be tested. The complainant has no means of proceeding. 2 Daniel's Ch. Pr. 981, 1496; 3 Phil. Ev. 490; Carpenter v. Devon, 6 Ala. 726.

If there has been no competent evidence before the register to sustain the plea of devastavit, then there would exist no obstacle to subject Mrs. Lang's share to the payment of the claimant's demand, except it be upon the ground that the deed executed 14th June, 1839, by Mrs. Catharine Lang, conveyed away to her children all her estate. This question, whether the deed could be supported upon the consideration of "love and affection," and whether it can be supported by proof of "valuable consideration," is waived by the Supreme Court. 14 Ala. 721. And they "rest the decree upon the paramount lien of the co-distributees." That is, the complainant had no lien except by the filing of his bill; and if, on reference to the master, it is shown by competent proof that Mrs. Lang was indebted to the estate, to an amount greater than her distributive share, the lien of the estate would be regarded as paramount.

The question, then, is: have the parties shown that there

was a devastavit, or indebtedness of any kind, by Mrs. Lang to her children? The defendants rely upon the exhibits to the answer. The register excluded them, as not responsive, and they fail to offer any other evidence to sustain them, and this is affirmed by the decree of the Chancellor. We maintain the correctness of this decision, and the case is, therefore, before the court upon matters set up in the answer, by way of avoidance, unsustained by evidence. It is said that a former chancellor decided the answers were responsive. This is not admitted; but if it be true, it does not conclude the question, for the Supreme Court, in the case already referred to, at page 722, expressly reserve the adjudication of the question, as one "which will arise before the register, and may come before the chancellor upon exceptions to the report, and when it has been definitely adjudicated in the primary court, can be here revised." So that this question is now presented in the very form indicated by the Supreme Court.

If the parties are driven, by the state of the account before the register, to take shelter under the deed, then that question is distinctly presented, and must be adjudicated. It needs no argument to show that the deed founded upon "love and affection" cannot be supported.

Can it be supported by the valuable consideration set up in the answer? To prove a different consideration, is contrary to the rules of law and equity. Murphy v. Trustees, 16 Ala. 94; Gresley's Eq. Ev. 287. Mrs. Lang makes the deed, and the other defendants claim under it. It has been already shown, that the deed was made 14th June, 1839; that she filed her account with the Orphan's Court, which is an exhibit to the bill, 24th January, 1841, eighteen months afterwards, showing the estate to be in her debt. Her answer to the bill is, that she admits she filed the said account, "and she now charges it was a true statement of the receipts and disbursements which had come to her hands at that time," and both the other answers admit the same thing. Now, if this be true, as already stated, how extraordinary is the statement that the "real consideration for deed made eighteen months prior, was to secure the estate against her devastavit." Respondent charges, "that in the management of said estate, acting, as she supposed at the time, for the benefit of said heirs,

but, as she is advised and believes, without any authority or warrant of law, as administratrix, she has so acted that she is and was liable for a devastavit of the estate more than the amount of her distributive share." The statement of the answers in reference to the account filed with the Orphan's Court, given above, apply, also, to the objection made as to the admissibility of that exhibit before the register.

LIGON, J.—That a judgment creditor has the right to pursue the equitable estate of his debtor, in a court of chancery, and have it set apart to the payment of his debt, is a proposition, which, I apprehend, will not now be controverted; and that the interest of one of several co-distributees in an intestate's estate, may be thus charged, was settled by this court, in this case, when it was here at a former term. 14 Ala. 719.

But in order to do this, it is indispensably necessary that the Chancellor should proceed to make a final settlement of the administration, and separate the portion of the judgment debtor from the remainder of the estate, before a final decree can be pronounced, condemning such portion to the payment of the demand. To this end, the master should take just such an account of the affairs of the administration, as is required to be taken by the Probate Court, on the final settlement of intestates' estates; and, when this is done, the Chancellor should direct the estate to be distributed among the parties in interest, in a manner as nearly conformable to that pointed out by the statute, for the government of the Probate Courts, as is practicable, and then direct the sale of so much of the portion sought to be charged by the creditor, as shall be sufficient to satisfy his demand.

Such appears to have been the opinion of the Chancellor at the time the reference was made to the master, in the case under consideration. It was evidently intended by him, that Mrs. Lang, (who was at once the widow and administratrix of Willis Lang, deceased, and the judgment debtor of the complainant,) should make a full settlement of her administration. Accompanying the order of reference, is the opinion of the Chancellor (Crenshaw) upon the rights of the parties in several important particulars, concerning the account

to be taken before the master; and these, so far as they go, should have been regarded by that officer as directions to him, in the discharge of his duties under the order. It having been admitted in the answer of Mrs. Lang that she had used and misapplied the assets of the estate, the Chancellor directed that an account of the sums so wasted should be taken by the master, and charged upon her portion of the estate, when the settlement was made. He declared that the lien of the heirs at law of Willis Lang, deceased, on the distributive portion of the widow, arising out of her waste of the assets of the estate while she was administratrix, was prior and paramount to that of the complainant, which never attached until his bill was filed, and that he could stand in no better position in relation to the distributive portion of the widow, than that which she occupied herself. He further declared that the accounts exhibited with the answer of Mrs. Lang, were responsive to the bill, and being called for by it, they should be received as proof, unless they were surcharged and falsified by other proof before the master. We repeat, that these rulings of the court, accompanying the order of reference, cannot be regarded in any other light than express directions to the master, to guide him in taking the account. He was not at liberty to disregard, or act in opposition to them, in stating the account under the order of reference, especially after they had been passed upon by this court, and their correctness sanctioned. Brown v. Lang et al., 14 Ala. R. 719.

We will now proceed to consider the exceptions taken before the master, and certified by him, with his report, as having been taken by the defendants.

The first three exceptions do not appear to be founded on anything contained in the record, in the report of the master, or any of the exhibits accompanying that report, and were rightly disallowed.

The fourth exception is well taken. Under the order of the Chancellor, with the directions preceding it, the master should have made out an account current between the administratrix and the estate, and in order to do so correctly, it was necessary for him to have ascertained the amount of the debts of Willis Lang, which had been paid by the administratrix,

up to the time the account was taken before him, that this sum might be carried to her credit. The failure to do this, was an error, for which the whole report should have been set aside.

The fifth exception is equally well founded, and it was palpable error to disallow it.

The sixth, seventh and eighth exceptions arise out of the master's disregard of the directions of the Chancellor, in reference to the matters involved in them respectively. An examination of the report shows, that it is justly obnoxious to each, and every one of them, and that it was error to disallow them.

Had no exceptions whatsoever been taken to the report of the master, the Chancellor should not have permitted it to stand, for the reasons, first, that the master disregarded the instructions and directions of the Chancellor; and, secondly, because the report does not furnish the facts necessary to enable the court to proceed to a final decree on the merits of the case. A report which is obnoxious to either of these objections, does not require exceptions to set it aside.

It may be remarked with respect to the first of these objections, in the present case, that the report, on its face, shows an utter disregard of the instructions of the Chancellor. These directed the master to ascertain and report the amount of waste committed by Mrs. Lang, arising from a misapplication of the assets of the estate in her hands to be administered. Nothing of this kind appears to be done, although the master's attention on the reference, was distinctly called to it by the defendant, as appears by the exceptions certified with his report. He refuses also to consider the exhibits attached to the answers of the defendants, which show the property, real and personal, belonging to the estate of Willis Lang, deceased, which came to the hands of the administratrix, with its kind and value, as well as an account of the rents and profits of the estate to the time the answers were filed. The Chancellor had directed him to regard these as evidence, unless they were surcharged and falsified, yet he takes it upon himself to say, that he did not regard these portions of the answers as responsive to the bill. It is not allowable for the master to set up his own opinion, on a matter connected with

the reference made to him, in opposition to that of the Chancellor. His duty is to obey, and if it is desired that the Chancellor should review his directions, the party supposing himself to ·be aggrieved by this obedience of the master, may take exceptions, and by this means bring the point again to the attention of the Chancellor. If, on the argument of these exceptions, it should be made to appear, that the justice of the case cannot be got at, without an alteration of the decree, in conformity with which the report is made, he will direct the report to stand over, and order that portion of the former decree containing the erroneous directions, to be reheard. It is not competent for the court, upon exceptions, to make an order which is not consistent with the original decree; from the time of the pronunciation of that decree, all the subsequent proceedings should be consistent with it. Daniel's Chan. Prac. & Plead. 1499.

In this case, the master has undertaken to do, what is not allowed to the Chancellor, and that, too, after the action of the Chancery Court had been reviewed and affirmed by this court. He has reported in direct opposition to the original decree, and an order confirming his report is so great a departure from that decree, and so clear an exercise of unauthorized power on the part of the Chancellor, that it may be reviewed in this court, without exceptions taken in the court below.

As to the deficiency of the report, in respect to the facts necessary to enable the Chancellor· to proceed to a final decree on the merits of the case, it may be said, that with the exception of the sum due the complainant on his judgment, it appears to be total. Neither the report, nor the exhibits attached to it, show either the condition of the estate, the property, real and personal, belonging to it, subject to distribution, or the shares or portions of the distributees. No account current is made out in that form which would warrant the Chancellor in proceeding to a final settlement of its affairs, and a decree of distribution. A report so directly repugnant to the order of reference under which it purports to have been made, and so deficient in those facts upon which the final action of the court could alone be based, need not be excepted to, in order to set it aside. In such cases, it is

the duty of the Chancellor, either to direct the master to review his report, in order to conform it to the decree under which it is made, or to disregard it *in toto*, and order him to report under the original decree. 2 Daniel Chan. Prac. & Plead. 1501; Turner v. Turner, 1 Dick. 313, 1 Swanst. 156.

For another reason, the decree in this case must be reversed. By its terms, the Chancellor directs the " defendants " generally, thereby including the children of Willis Lang, deceased, to pay into court the sum reported by the master to be due on the complainant's judgment against Mrs. Lang, within thirty days, and in default of such payment, he directs an execution therefor against said " defendants," in the usual form. The bill seeks no moneyed decree against the heirs at law of Willis Lang, deceased, nor does it, in any of its allegations, lay a predicate which will justify such a decree; neither does the complainant pretend to have any demand against them. It is true, he alleges that Mrs. Lang has made to them a voluntary deed for her portion of the estate, which he insists is fraudulent as to him; but he seeks to set this deed aside altogether, and does not seek to charge the property conveyed by it in the hands of the grantees, or to have them declared trustees of her interest, for his benefit. His whole object seems to be, to disencumber Mrs. Lang's portion, and have it set apart for the satisfaction of his judgment against her. The children of Willis Lang, deceased, are made parties, for the purpose of effecting a final settlement of the estate, in which they had a joint interest with their mother; and because they are the grantees in a deed, made by Mrs. Lang, which is alleged to be fraudulent as to the complainant. For these purposes, they were not only proper, but necessary parties to the bill, and the only relief sought against them, is, the prayer that the deed made to them by their mother, be set aside for fraud. A decree, which, like the present, grants more extensive relief than is prayed for by the bill, or justified by its allegations, and the proof taken under them, is erroneous. Again, the decree, in its present form, is inoperative. It is shown by the proof, that neither Mrs. Lang nor her children have any property, apart from their interest in the estate of Willis Lang, deceased; this is not subject to levy and sale for the debts of any, or all of them, under execution

on a moneyed decree, so long as the estate remains unsettled in the hands of the administratrix; such an execution is as powerless to charge the property, as the one which issued on the judgment at law. To render the decree operative, it was indispensable to separate Mrs. Lang's portion from the portions of her children; and to do this, a final settlement of the administration, and a distribution of the personalty were both necessary; neither of which has been effected here.

The deed made by Mrs. Lang to 'her children, purporting to convey all her interest in her husband's estate, is, on its face, made upon consideration of natural love and affection, and none other is established by proof. It is voluntary, and being made at a time when she was indebted to the complainant, it is, therefore, void as to him, and was rightly set aside. This, however, cannot affect the right of the children to have so much of her portion of the estate appropriated to their own use, as will be sufficient to make good any waste, or misapplication of assets, which has occurred during her administration, and this in preference to the claim of the complainant. She could not be permitted to receive any part of the estate in her own right, while she was a debtor to the trust fund, for moneys appropriated from that fund to her own use; neither can the complainant, who occupies her position to the extent of his demand against her, be allowed to do so.

It is proper here to remark, that in the second head-note prefixed to the case of Brown v. Lang, 14 Ala. 719, in which it is said, that this court "held, that in the absence of fraud, the co-distributees, *had, under the deed*, a prior lien on the share of the administratrix, as distributee, to the lien of the creditor," the reporter was betrayed into a misapprehension of what was really decided by the court. No question could properly have arisen in that case, in this court, on the validity or invalidity of the deed, or its legal effect, for the obvious reason, that no opinion had been expressed on this branch of the case in the court below, but it was distinctly reserved by the Chancellor until the coming in of the master's report, and consequently was not here for revision. In the opinion of the court, it is said, "We may then place out of view the deed, without stopping to inquire whether it can be supported by proof of valuable consideration, and rest the decree of

the Chancellor upon the paramount lien of the co-distribu-
tees of the intestate's estate, upon the share of Mrs.
Lang." This explanation I esteem due to the court, to pre-
vent the inference which might otherwise be drawn, of a
conflict between our decision then and now in reference to
the deed from Mrs. Lang to her children. So far from a
conflict, the harmony is complete, since both decisions pro-
ceeed upon precisely the same principles in setting up the
prior equity of the distributees.

The master's report must be set aside, and the decree re-
versed at the cost of defendant in error. The proceedings,
up to the order of reference, are regular and without error ;
the cause must therefore be remanded, with directions that it
be taken up at that point, and proceeded in to a final decree,
on the principles laid down in this opinion, and the opinion
of the Chancellor accompanying the order of reference.