## KNIGHT v BURDSAL et

Ohio Common Pleas, Hamilton Co

Decided May 5, 1937

Henry L. Kelsch, Cincinnati, for plaintiff.
Leslie, Herman & Riechman, Cincinnati,
for defendants.

### OPINION

By MORROW, J.

The petition in this case states that the Fifth-Third Union Trust Company is ancillary administrator of the estate of Alms ,Burdsal, deceased, in the Probate Court of this county, and that the plaintiff was duly appointed administratrix by the same court, and as such has obtained a judgment against the defendant Helen Burdsal, which is unsatisfied.

Plaintiff states that an execution was issued upon the judgment against the personal and real property of Helen Burdsal, but execution was returned by the sheriff wholly unsatisfied. Plaintiff states that Helen Burdsal has not any real or personal property subject to levy on execution, sufficient to satisfy the said judgment, interest and costs.

Plaintiff states that the late Alms Burdsal was the husband of said Helen Burdsal, and said deceased was a resident of New York; that the Fifth-Third Union Trust Company is the qualified ancillary administrator of the estate of said deceased; and that Helen Burdsal has acquired certain property rights, titles and interests, legal and equitable, not subject to levy on execution "but which under and by virtue of §11760, GC, are liable to be subjected to the payment of said judgment."

Plaintiff also states that the interest of Helen Burdsal in the estate of her deceased husband is held by said Fifth-Third Union Trust Company in Hamilton County.

It is prayed that the ancillary administrator be ordered to pay out of the share of Helen Burdsal an amount sufficient to satisfy the judgment aforesaid, and for other relief.

A demurrer was filed to this petition.

I. We are concerned here with a creditors' bill and in Ohio creditors' bills are authorized by statute, §11760, GC, as is conceded by defendant here.

"The equitable remedy by creditors' bills is one which has been made use of very frequently in the United States. They are used for the purpose of getting at property of a debtor which cannot be reached at law, either because it has been conveyed away beyond the grasp of an execution, or because it is of such a character that it cannot be seized under a common-law writ."

Bispham's Principles of Equity, 6th Ed., par. 33, p. 46.

"The jurisdiction of a court of equity, it has been said, to reach property of a debtor justly applicable to the payment of his debts, even where there is no specific lien on the property, is undoubted; it is a very ancient jurisdiction. And, again, it has been said that while courts of equity are not tribunals for the collection of debts, yet they afford their aid to enable creditors to obtain payment, when their legal remedies have been proved to be inadequate. * * *

"The equitable remedy by creditors' bill has been extensively used in many of the United States, and its efficiency has been much increased in several states by stat-

ute." Bisphams' Principles of Equity, 6th Ed., p. 652, par. 527.

In commenting on the Ohio statute, Judge Lurton states in 8 C.C.A. 370, Brooks et v Raynold, 16 U. S. App. 713, 59 Fed. 938; 9 O. F. D. 160, as set forth in **11 Ohio Jurisprudence, p. 985, §2:**

"Creditors' Suits:
"This Ohio statute ought not to be construed as relating to or dealing with the substantive laws of property. It is found in the code of civil procedure, and it should be regarded as extending the remedy of creditors to property and property interests not subject to seizure by execution at common law on account of the narrowness of the common law writ. At common law the writ of execution was limited in its operation, and was, in addition, confined to those estates recognized by the law as legal estates. Choses in action, and equitable interests, were not subject to common law writs. On account of this the jurisdiction of equity to entertain suits in aid of a creditor had its origin. 3 Pom. Eq. Jur. §1415. Statutes have been enacted in many states extending common law remedies and enlarging equitable jurisdiction in creditors' suits. This Ohio statute is one of this class."

II. It is true that as far as we can tell from the petition (since it is not alleged that an order of distribution has been issued by the Probate Court calling upon the ancillary administrator to pay Helen Burdsal her share, or to return the funds in its hands to the domiciliary administrator) that it can be argued that funds payable to Helen Burdsal are now "in custodia legis."

**11 Ohio Jurisprudence, p. 1007,** states:
"Funds in Custodia Legis—The general rule as to the right of a creditor to maintain an action to subject the payment of a judgment, funds in custodia legis, distributable to the judgment debtor in another proceeding was thus stated in an early case.

" 'Courts of equity may entertain a bill by a creditor to reach and apply, in payment of his debt, property or rights of his debtor which cannot be reached by attachment or taken in execution in a court at law against the debtor; but this does not extend to property, which is in the hands of officers of the law for distribution under proceedings provided by statute for that purpose'."

In this connection it will be noted that brief of defendant on demurrer argues that

there is no present equitable right to property in Helen Burdsal, who has no "direct right against the administrator until the order of distribution has been entered." (Demurrant's brief, page 2).

It also seems that §10511-25, GC, makes it within the discretion of the Probate Court as to whether the ancillary administrator makes distribution direct, or returns funds in its hands to the domiciliary administrator.

However, confining ourselves for the time being to a discussion of the Ohio law, **18 Ohio Jurisprudence, §437, p. 542,** states:

"Creditors' Bills—Although the general rule is that a creditor has no right to maintain an action to subject to the payment of a judgment, funds in custodia legis, and for many purposes funds of an estate in the hands of the personal representative are considered in custodia legis, it is a general rule that the distributive share of a debtor in the hands of the personal representative of a decedent's estate may be reached by a creditors' bill, though the mere expectancy of a debtor in the estate of a living ancestor is not thus reachable. This general rule has been applied in Ohio."

There is quoted under this statement **First National Bank v Beebe, 62 Oh St 41, 56 NE 485; Boswell v Hall, 6 O.N.P. 497, 8 O.D. N.P. 590.**

In his brief (page 4) attorney for demurrant states:

"This court could not frame an order against the administrator which would not constitute an attempted interference with a matter lying purely within the discretion of the Probate Court, and this court should therefore not undertake to entertain jurisdiction."

It seems to me that the language of the court in **First National Bank v Beebe, 62 Oh St 41,** pages 45, 46, 47 and 48, bears upon this contention of the demurrant, and in answer to its own question (p. 45)—"Was the Common Pleas Court deprived of jurisdiction because of the exclusive jurisdiction of the Probate Court in the matter of the estate of Walter M. Beebe, deceased?— the court winds up the discussion by saying on page 48:

"Confining the final action of the Probate Court to a general order of distribution, as the rule announced makes neces-

sary, it is not perceived that any proper judgment or order which the Common Pleas Court might make would in the least conflict with it."

In the well considered Nisi Prius case, **Boswell v Hall, 8 O.N.P. 497,** Judge Dempsey states in syllabus 2:

"The decree of this court can be so molded as to preserve the rights of creditors of the devisee without interfering with the exclusive jurisdiction · of the Probate Court, where control over the accounts of executors is exclusively vested."

III We note argument of demurrant (Demurrant's brief p. 3) "that attachment or garnishment or execution under legal process will not lie by the judgment creditor of a beneficiary against the administrator of an estate," citing **Orlopp v Schueler, 72 Oh St 41.**

In discussing creditors' bills in **18 Ohio Jurisprudence, par. 437, p. 543,** in the note, it is said:

"It is noted, however, that Ohio courts do not permit the seizure of property ·in the process of administration under garnishment or attachment process."

A distinction, therefore, seems to be had in Ohio as between the rights of the creditor under a creditors' bill, and under garnishment or attachment process.

IV. Demurrant in his brief (page 4):
"Although we have been unable to find any citation directly in point, logic and reason make it clear that this court could not frame an order against the administrator."

We have reviewed the Ohio law rather briefly and now desire to cite some outside cases.

In American Annotated Cases, 1914-B, page 959 (Note):

"It would seem clear that the distributive share of a debtor in the hands of an administrator may be reached by creditors' bill."

Brown v Lang, 14 Ala. 719, 21 Ala. 179, 56 Amer. Decisions 244; Lawson v Virgin, 21 Ga. 356; Earl v Grove, 92 Mich. 285, 52 NW 615; Bennick v Bennick, 62 N. C. 45; Ginn v Brown, 14 R. I. 524; Farrar v Haselden, 9 Rich. Eq. (S. C.) 331; Moores v White, 3 Grat. (Va.) 139.

Brown v Lang, 21 Ala. 179, states in syllabus 1:

"A distributee's undivided interest in an unsettled estate may be set apart in equity by his judgment creditor and subjected to the satisfaction of his demand."

This case concerns a creditors' bill, and it is also true that the court states the chancellor should proceed to make a final settlement of the administration, but I take it the principle is clearly stated by syllabus 1.

This same case is also cited in 8 R.C.L. p. 12 par. 12:

"Estates of Decedents:—It is apparently well settled that the distributive share of a debtor in the hands of an administrator may be reached by a creditors' bill."

Opposed to this proposition, however, is the case of First National Bank of Lincoln v Starkey, 190 Ill. App. 582, affirmed by 268 Ill. 22, and which is cited in 69 Corpus Juris, p. 1251, par. 2621.

In note to the case of Massey v Gorton, 90 American Decisions, p. 295, in connection with discussion of a creditors' bill, is the statement, fortified by a number of authorities:

"The interest of an heir or distributee in the hands of an executor may be reached."

I will not burden this memorandum with a list of the cases cited thereunder.

In the case of Gorman v Stillman, 52 Atlantic Rep. p. 1088, (Supreme Court of Rhode Island) the court says in syllabi 1, 2 and 3:

"1. A bill in equity alleging that an executor had in his hands a sum of money belonging to complainant's debtor as a legatee, and seeking to subject the fund to the debt, was not demurrable on the ground, that it did not show that after payment of debts, etc., there would be any assets applicable to the legacy.

"2. While, under Gen. Laws R. I. c 218, §§15, 22, no legatee can bring a suit against the executor until the latter has accounted, the creditor of a legatee may before an account proceed in equity against funds in the hands of the executor in which the legatee has an interest.

"3. On such a proceeding in equity, the administration is not taken from the Pro-

bate Court, nor any accounting necessary in equity; it being merely the duty of the executor to answer as to the amount due the legatee."

The court says in its opinion:
"Counsel argues that if this bill should be sustained the administration of the estate would necessarily be taken away from the Probate Court, and brought into this court. * * * Counsel is in error in the position thus taken by him. The effect of this bill is not to take away from the Probate Court the administration of the estate in question, or in any proper sense to interfere with the administration thereof in said Probate Court. Its object is simply to reach the fund now in the hands of the executor of said estate belonging to the alleged debtor, and appropriate the same, or so much thereof as shall be necessary, to the payment of his indebtedness to the complainant; and that this may be done without calling for any accounting in this court, and without embarrassing the settlement of the executor's account in the Probate Court, is very apparent. All that will be required of the executor will be to hold the money, which after an accounting by him, shall be found due and payable to the respondent legatee, subject to the order of this court in this suit."

It is interesting to note in the case last quoted that the prayer of the bill is that the executor be enjoined from paying over or transferring any of the estate and money in his hands belonging to the legatee until the further order of the court; that an equitable attachment be issued in favor of the complainant, and that the executor discover under oath the full amount of the estate belonging to the legatee.

V. The briefs in this instant case both enlarge upon the statement of facts set forth in the petition, and we are tempted to discuss these additional facts, but this matter, of course, should be decided upon the allegations of the petition.

We take it that Statute §11760 GC is an authority for the ancient creditors' bill, crystallized in statutory form, and the same reasons apply for the invocation of both; hence our review of cases in other states.

VI. The petition alleges the recovery of a judgment and unsatisfied execution, and the absence of any real or personal property subject to levy on execution, sufficient to satisfy the judgment the acquirement of

property rights by debtor not subject to execution, and the fact that the defendant bank is an ancillary administrator. It is also stated that under §11760 GC the debtor's interests in the estate are liable to be subjected to payment of the judgment, but this is a legal conclusion that must be ignored.

However, we feel that a cause of action in the nature of a creditor's bill under our statute has been stated by plaintiff, notwithstanding that it is not stated in petition that the Probate Court made an order of distribution of the ancillary estate, or in its discretion ordered the return of net funds to the domiciliary administrator in New York.

VII. The demurrant objects that the Probate Court might in its discretion adhere to its right to ship the corpus of the estate to the New York administrator, and asserts that as the matter stands defendant Helen Burdsal has no present interest in the ancillary estate.

As to the latter claim, we are bound by statement of petition that Helen Burdsal "has acquired certain property rights."

VIII. As to the former proposition, it would appear off-hand that this is the sort of case wherein a creditors' bill could be brought to function as a necessary and useful instrument.

If demurrant is correct, plaintiff in this case would be compelled to haunt the Probate Court in order that the time of an order of distribution to defendant might be immediately ascertained, and thereupon, in some manner cause the distributive share of the debtor here to be arrested in its progress into the hands of the debtor, or toward the administrator in New York. As a precaution it might also be necessary for plaintiff here. to sue in New York State on her Ohio judgment, and in another creditors' bill, or otherwise, subject payment of the distributive share in New York, when it arrives there, to the Ohio debt then translated into a New York judgment.

The latter expedient would mean that a resident of this county would be relegated, to the New York courts to collect a judgment obtained here against another Hamilton County resident.

It would seem that a creditor's bill should be a remedy for this situation.

IX. It is interesting to note that in the Rhode Island case cited above it was sought

to enjoin the executor from paying over to debtor legatee his distributive share in the estate.

While, of course, the prayer is not a part of the petition for the purpose of demurrer, it might be noted that the "other and further relief" asked for in this case might include an injunction upon the ancillary administrator, forbidding the distribution of defendant Helen Burdsal's share until this instant suit is determined.

This matter is up on demurrer, and a fuller disclosure of the facts will appear upon trial. As the matter stands, however, the demurrer should be overruled, and the case proceed.