REED BROS. STONE CO., INC., v. PITTMAN CONST. CO.—101 S. W. (2d) 478.

Middle Section.   June 27, 1936.

Petition for Certiorari denied by Supreme Court, January 23, 1937.

Albert Williams, Reese L. Macey, and S. L. Felts, all of Nashville, for appellant Reed Bros. Stone Co., Inc.

J. E. Travis, of Nashville, and Ralph H. Pharr, and Cam D. Dorsey, both of Atlanta, Ga., for appellee Pittman Const. Co.

DeWITT, J. The Pittman Construction Company was, in 1932, the principal contractor with the United States Government for the construction of a building for the United States Veterans' Hospital at Tuskegee, Ala. On January 14, 1932, it entered into a contract with Reed Brothers Stone Company, of Birmingham, Ala., for furnishing stone—limestone trim, cut stone and random ashlar base—in accordance with plans and specifications referred to in said contract, for the sum of $15,000. This amounted to 7,600 cubic feet of stone, so that the average price per cubic foot was $2.12.

The controversy in this cause arose over a supplementary contract between complainant and defendant, which grew out of a change in the plans for the building. Revised plans were submitted by the defendant to the complainant as the basis for bidding for furnishing the stone additionally required. The defendant had not estimated the number of cubic feet called for, but submitted this to the complainant. On February 5, 1932, the complainant submitted to the defendant its proposal by letter as follows:

"Re: Tuskegee Hospital Units. We propose to furnish the additional limestone trim and random ashlar required for this job, as per the revised plans submitted to you, complete as called for in our original contract, all for the sum of five thousand three hundred and twelve and no/100 dollars $5312.

"For your information, in figuring the setting, we estimate the increase in cube to be approximately 2500 cubic feet.

"Please let us have your extra order covering this work as soon as possible. In the meantime, we shall continue preparation of our working drawings."

It appears without dispute that the additional stone thus called for amounted to 1,808.5 cubic feet. At the unit price of the original contract, that is, $2.12 per cubic foot, this would amount to $3,834.02; but the complainant brought this suit to establish its claim to $5,312. The defendant admits that it owed $3,834.02 and no more. The bill sought a recovery of $3,533.18 as the balance claimed after certain payments had been made. The defendant in its answer admitted that it owed the complainant $1,883.40, which sum it tendered and paid into the registry of the court.

On April 27, 1932 the defendant wrote to the complainant as follows:

"We hereby accept your proposal dated February 5, 1932, covering all additional limestone, with freight allowed, to Tuskegee, Ala., as shown by revised plans and new location of above contract.

"All of the above extra work to be done for five thousand three hundred twelve dollars ($5,312.00).

"If the Veterans Administration should question the correctness of price you will be expected to furnish the evidence to show that your figures are correct."

By a letter dated April 28, 1932, the complainant acknowledged receipt of the order, as follows:

"We acknowledge receipt of your letter dated April 27th, approving our extra claim on this job amounting to $5,312.00.

"We thank you for this additional business, and are enclosing our formal confirmation order form."

The order form contained the following:

"Items required: All additional limestone trim and random ashlar required for the Veterans Hospital Job, Tuskegee, Alabama, as per the revised plans submitted by you on February 1st, 1932, for the sum of $5,312.00."

Between February 5th and April 27th, there was additional correspondence between these parties relative to the changes made by the Government, which will be hereinafter referred to.

Upon the first hearing of this cause, on the entire record, the chancellor referred the cause to the clerk and master to report from the evidence on file on the following matters:

(a) What was the contract between the complainant and defendant covering the extra work sued for in this cause?

(b) What sum, if any, is due and owing from the defendant to the complainant for the extra work involved in this cause?

This was a reference of the whole case to the clerk and master, but no objection was made to it and any objection is therefore treated as waived. Scales v. James, 9 Tenn. App., 306; 53 C. J., 703; 10 R. C. L., 511.

The clerk and master rendered an elaborate report. The substance of his conclusions is as follows:

1. That the contract covering the extra work was that the complainant was to furnish to the defendant all the extra stone required by the revised plans and specifications for $5,312, provided, however, that if the Veterans' Administration should question the price, the complainant would have to furnish evidence that the price was correct; that the Government did question the price upon finding that the amount of stone required was only 1808.5 cubic feet; that the complainant did not furnish evidence that the price was correct; that the amount of stone furnished was not ascertained until after April 27, 1932, and was until after that date unknown to the defendant; that the defendant was entitled

556

to rely upon the statements of complainant as to the amount of stone required; that complainant intended for defendant to rely upon its statements; that defendant did rely upon its statements; that under the circumstances shown, complainant is guilty of such unconscientious conduct toward defendant in this transaction that it is in court with unclean hands, and is not entitled to insist that defendant by its conduct accepted its proposal to furnish the extra 'stone at complainant's stated price without regard to the quantity of stone to be furnished.

2. That the total amount due and owing for the extra stone was $3,834.02, being for 1808.5 cubic feet at a unit price of $2.12 as allowed by the Government; and that there was a balance due on the original and extra contracts of $2,055.20.

The question of allowance of interest or attorney's fees was reserved to the discretion of the court.

Elaborate exceptions were taken to the report and were overruled by the master and by the chancellor.

A decree was rendered confirming the report and awarding a recovery in favor of the complainant against the defendant for $1,310.67, to be credited with the sum of $871.55 (a sum remaining in the hands of the clerk and master after a previous disbursement of $1,011.85 to a creditor of the complainant) less the costs of the cause. From this decree the complainant appealed and has assigned errors challenging the report of the clerk and master and the decree overruling the exceptions thereto.

Upon the theory that the reference and report involved only questions of law, or of mixed questions of law and fact, the appellant contends that the whole case is here reviewable de novo; and its assignments are that the chancellor erred:

1. In not holding and decreeing that the contract for the extra stone was that appellant was to furnish appellee with all the extra stone required by the revised plans for $5,312.

2. In holding and decreeing that appellant had made untrue statements as to the quantity of extra stone, that appellee had relied thereon, and that appellant was chargeable with such unconscientious conduct that it was not entitled to insist that appellee had accepted its proposal to furnish the extra stone for $5,312.

3. In holding and decreeing that appellee had not accepted appellant's proposal to furnish the extra stone until it wrote its letter of April 27th, that its acceptance made the condition stated in its letter of April 27th a part of the contract, and that both parties had interpreted this condition to be that appellant would have to convince the Government that its price for the extra stone was correct, or take what the Government allowed.

4. In not holding and decreeing that appellant's price of $5,312 for the extra stone was reasonable, fair, and just; and that, even

in the absence of a contract and on a quantum meruit, appellant was entitled to this sum.

■ Where matters have been properly referred to the master, the concurrent finding of the master and chancellor will be held to be conclusive to sustain it. Gleason v. Prudential Fire Insurance Company, 127 Tenn., 8, 151 S. W., 1030; Brown v. Dailey, 85 Tenn., 218, 1 S. W., 884; 1 Michie's Digest ·(2 Ed.), p. 632. But, of course, a concurrent finding of law, or of mixed questions of law and fact, is not within such rule of conclusiveness. Love v. Nashville A. & N. Inst., 6 Tenn. App., 104. In Gibson's Suits in Chancery (2 Ed.), section 596, it is said:

"The line of division between matters proper to be referred to the Master and matters not proper to be referred is not well defined; but it may be stated generally that the main issues of a controversy, and the principles on which these issues are to be adjudicated, must be determined by the Chancellor, while collateral, subordinate and incidental issues and ascertainment of facts ancillary to the determination of the main issues or the execution of the decree, may be referred to the Master."

In State ex rel. Weaver v. Bolt, 130 Tenn., 212, 169 S. W., 761, the court applied the rules that it is improper to refer to the master a question which is the vital, or paramount, issue in the case; and that the appellate court is not bound by concurrent finding of chancellor and master on questions of fact, which should not have been submitted to the master—citing many previous Tennessee decisions. It was further held that such a finding, though not binding on the appellate court, does not oust it of its jurisdiction, does not relieve it of the duty to pass on the main issue in the case.

■ ■ In the instant case, the paramount, vital issue is: What really was the contract between the parties? This question was one of law, or a mixed question of law and fact, and it should have been determined independently by the chancellor. The solution of it depends upon the written evidences of the contract, the course of dealing between the parties, and any interpretation of the contract by the parties themselves. As to this question we are not bound by the general rule as to concurrent findings.

■ It is well settled that in order to arrive at the intention of the parties to a written instrument, the court should place itself, as nearly as it can from the facts, in the position of the parties, so as to see what they saw and contemplated as their undertaking; viewing the situation of the parties and their surroundings, so as to place itself in the position which they occupied, and see the things spoken of in the contract as they saw them. See 4 Michie's Digest, p. 542, citing many cases in support of these rules.

The offer and the acceptance, in writing, have been set forth. It should be remembered that in its letter of acceptance, the defendant said:

"If the Veterans Administration should question the correctness of the price you will be expected to furnish the evidence to show that your figures are correct."

What this language could mean other than that the price would be subject to the approval of the Veterans' Administration, we are unable to explain. The disapproval of the price is exactly what gave rise to this controversy. This disapproval was made after the offer was thus accepted. The evidence shows that until the report was made to the Veterans' Administration and it declared that as much as 2,500 cubic feet of stone had not been furnished, and it was definitely ascertained that the amount was only 1,808.5 cubic feet, the defendant did not know what was the true amount; and that it had been relying on the representation, or estimate, made by complainant's manager, Sullivan, that there would be approximately 2,500 cubic feet. It is plain that this estimate was very excessive, and Sullivan admits that when he made it, he knew that it was excessive. The use of the word "approximately" indicates a lack of finality in the agreement. It is not a reasonable conclusion that men would trade definitely on such a basis. The further correspondence and transactions between the parties furnish material explanation as to what was in their minds.

Section 1 of the first contract between Reed Brothers and Pittman Construction Company provides:

"The subcontractor agrees to furnish all material and perform all work as described in Section 2 hereof . . . for Veterans Administration U. S. Government hereinafter called the owner . . . in accordance with the general conditions of the contract between the owner and the contractor . . . all of which general conditions, drawings and specifications signed by the parties thereto . . . form a part of a contract between the contractor and the owner . . . and hereby become a part of this contract."

Section 2 provides as follows:

"The subcontractor agrees to furnish all of the lime stone trim, cut stone and the random ashlar base."

Section 5 provides:

"The contractor and subcontractor agree to be bound by the agreement, the general conditions . . . and also by the following provisions: The subcontractor agrees—

"(a) To be bound to the contractor by the terms of the agreement, general conditions, drawings and specifications and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the owner. The contractor agrees—

"(e) To pay the subcontractor . . . the amount allowed to the contractor on account of the subcontractors work to the extent of the subconstractor's interest therein."

The contract between Pittman Construction Company and the United States (the owner), by which Reed Brothers agreed to be bound, provides as follows:

"Article 3. Changes.—The contracting officer may at any time . . . make changes in the drawings and specifications of this contract and within the general scope thereof. If such changes cause an increase or decrease in the amount due under this contract . . . an equitable adjustment shall be made."

Thus it was contemplated, understood, and agreed to in the original contract that additions would be furnished if required by the United States, and that they would be paid for by an "equitable adjustment."

On March 11, 1932 appellee sent to appellant drawings, with the statement:

"As the building will be constructed in accordance with these drawings, we are asking that you check same carefully and if any further changes have been made in limestone, please give us your final figures right away."

This statement shows that the appellee was relying on the final calculation by appellant as correct. The appellant must have understood this, as in its reply the appellant said:

"We have checked over the changes in the stone work and although there is a slight omission of ashlar in a few places, still the addition at other places just about counterbalances this, until there will be no change in the extra price formerly submitted to you."

The representation as to the amount of stone required was erroneous. The appellee relied upon it and therefore accepted the bid of $5,312 as correct, as based upon the amount of stone needed.

The sum of $5,312 for 2,500 cubic feet would be at a cost of $2.12 per cubic foot, the amount per cubic foot in the original contract, ascertained by dividing the number of cubic feet (7,600) into the gross price of $15,000.

Shortly after April 28, 1932, appellee's superintendent, Pittman, was called to Washington by the Veterans' Administration and was notified that there was not 2,500 cubic feet of limestone required on the job. He returned to Atlanta, and on May 10th appellant's manager, Sullivan, came to appellee's office in Atlanta and agreed that there was not this amount required. He stated that they were prepared to go to Washington if necessary to sustain their price, and that: "If you cannot get it I can, but I am not recognized by the Government and they won't pay any attention to me." Appellee then offered to give him authority to go to

560

Washington and get the figures allowed. On May 17th appellant wrote appellee as follows:

"Although we do not feel that we should be put to the expense of a trip to Washington unless it is absolutely necessary, still we are prepared to do so if that is what it takes to convince the Bureau that the price is a fair one."

On May 21st, appellee sent to appellant a letter addressed to the Chief of Construction of the Veterans' Administration, introducing Mr. E. L. Sullivan, of Reed Brothers Stone Company, subcontractor, and stating:

"There being a vast difference between his estimate of the increase of stone at the new location over the old, and that of the Administration, we hereby authorize him to represent Pittman Construction Company in making adjustment."

On May 24th, appellant wrote to the Chief of Construction endeavoring to justify its charge and saying:

"If you desire further facts we should be very pleased to send a representative to Washington to explain to you in detail but as there is so little profit on work now we naturally avoid every expense."

Reed Brothers failed to get the Government to agree with its figures, and the Government allowed only the unit price of $2.12 for the stone, plus the cost of setting, etc., which was the same allowance made by the Government under the original contract for the limestone furnished by appellee, as based upon an unit price of $2.12 per cubic foot to the subcontractor.

Upon completion of the work appellee offered to pay for the stone upon the basis of $2.12 per cubic foot, but appellant insisted upon payment upon the basis of $5,312 for the extra stone, as if there had been no misrepresentation or misunderstanding as to the amount of extra stone required. The appellee refused to pay upon this basis, hence this suit.

This court is of the opinion and holds:

(1) That the master and chancellor were correct in finding that the agreement made in writing was based upon the appellant's erroneous statement that 2,500 cubic feet of stone, or approximately that much, would be required.

(2) That the appellant brought about the acceptance of the offer by such misrepresentation, and that the appellee made the agreement in reliance upon it.

(3) That there was at least a mutual mistake as to the amount of stone required, and that the appellant cannot be heard to claim that the appellee is bound by its failure to verify the estimate before it accepted the offer.

(4) That the whole conduct of the parties, the correspondence, the conferences, and transactions between them with refer-

ence to this matter, warrants the inference of contemporaneous understanding and construction of the contract in accordance with the position taken by the appellee.

■ . (5) That considering all these transactions, the statement made by the appellee to appellant in its letter of acceptance of the offer, that, "If the Veterans Administration should question the correctness of price you will be expected to furnish the evidence to show that your figures are correct," was notice to the appellant that the price to be paid for the extra stone might at last be determined by the Veterans' Administration, that is, especially as to the amount of stone required.

(6) That this proviso was in accord with the previous course of dealing and agreement between the parties as expressed especially in their original contract, by which the subcontractor placed itself in the same position as the principal contractor as to obligations and responsibilities that it assumed toward the owner.

■ (7) That it would be inequitable to allow the appellant to recover the full price of $5,312, and that the amount decreed it by the chancellor is all that it is entitled to.

It results that there is no error in the decree of the chancery court, and it is in all particulars affirmed. Accordingly, a decree will be entered in this court in favor of the appellant against the appellee for the sum awarded by the chancellor, but without interest from the date of his decree; that is, for $1,310.67, to be credited with the sum of $871.35, less the costs of the cause in the chancery court. The costs of the appeal will be adjudged against the appellant and the surety on its appeal bond. The cause will be remanded to the chancery court of Davidson county, part 2, for further proceedings in execution of this decree and that of the chancery court.

Faw, P. J., and Crownover, J., concur.