205 So.2d 903

Carolyn Susan **BROCK**

v.

James Marvin **BROCK**, Jr., et al.

**8 Div. 230.**

Supreme Court of Alabama.

Aug. 17, 1967.

Rehearing Denied Jan. 11, 1968.

———◇———

T. J. Carnes, Albertville, for appellant.

Lusk & Lusk, Guntersville, for appellees.

HARWOOD, Justice.

In 1957 the appellant, Carolyn Susan Baird and James Brock, Jr., were married. Each was about 17 years of age at the time.

Thereafter they lived in the home of the James Brock, Sr.'s in Albertville except at the time James Brock, Jr., attended college for a year or so. It appears that the Senior Brocks built a home for the young couple and they resided in this home for a while.

In April 1962, James and Susan separated and Susan and their young son moved in with the Senior Brocks. In November 1962, Susan was awarded a decree of divorce on the grounds of cruelty. She and her son continued to reside in the Brock home.

The decree of divorce awarded gross alimony to Susan of $2,500 and an additional sum of $60.00 per month so long as she remained unmarried. Confirming an agreement between the parties and the parents of each of the parties, custody of the child was awarded to the paternal grandparents subject to visitation rights specified in the decree.

Susan obtained a job in Huntsville, but returned to the Senior Brock's home every

weekend. After about nine months Susan resigned her job in Huntsville and went to live with her parents in Lebanon, Tennessee. Shortly thereafter she filed a petition for custody of her child.

Pending this proceeding, an agreement was worked out between the Senior Brocks, and Mr. and Mrs. Baird, parents of Susan, and J. M. Brock, Jr., and Susan, whereby the custody of the child was to be vested in Susan subject to reasonable visitation rights. It was further agreed that the father and/or the Senior Brocks should be entitled to the custody of the child for two months during the summer; that after the child is enrolled in grade school the Brocks should have his custody for one weekend per month as specified. Each custodian was to share equally in responsibility, time, and expense in transporting the child, it being the obligation of the one having custody at the time to deliver the child to the other party at the end of that time.

It was further agreed that the father shall pay to the mother the sum of $20.00 per month for the support of the child, except when the child is in custody of the Brocks. This amount was to be deemed reasonable until the child is enrolled in grade school, at which time the amount was to be renegotiated by the parties. The obligation of the father for the monthly payments was to end if the mother ceased to reside in Lebanon, Tennessee.

On 11 March 1964, the court entered a decree finding this agreement to be to the best interest of the child, and ratified and confirmed it.

Susan and her child then went to live with her parents in Lebanon, Tennessee. Eventually, she secured employment in Nashville, Tennessee, as a legal secretary.

On 20 August 1965, Susan filed a petition in which she sought to have the court set a reasonable sum for the support of the child; to have removed the condition that to receive support payments she must reside in Lebanon, Tennessee; a declaration that the maternal grandparents of the child (the Bairds) have, under the present circumstances, no legal obligation to assist in the support of the child; taking from the Brocks all legally enforceable rights of visitation and custody; to make changes in the custody provisions to meet the convenient needs of all parties; and to direct the respondents to pay all costs of this proceeding, including a reasonable fee for services of complainant's attorney.

Evidence on this petition was taken before the Register. Susan appeared as a witness, and the interrogatories of the husband, and his answers were introduced. There was also a stipulation as to the husband's assets and earnings.

In her testimony before the Register, Susan testified that at the time of the original agreement whereby the Brocks were given custody of her child, she was distraught and without financial means. Since going to her parents' home she has been able to reorganize her life and her thinking. It is now her desire that she establish a separate home for herself and her child. This would necessitate that she employ a housekeeper to live with her and care for her child when she was working.

Her mother has cared for her child in excellent fashion since they returned to the Baird home. The child is happy in his surroundings and is enrolled in a nearby school which is modern in every respect. Her parents have bought a pony for the boy. They have a comfortable home some ten miles out from Lebanon.

After she had lived in her parents' home for a while, she improved emotionally to the extent that she was able to go to work as a legal secretary for a law firm in Nashville. Her starting salary was $300.00 per month, and has now been increased to $350.00 per month.

The distance from her home to Nashville is approximately 40 miles, and it is necessary that she leave rather early in the morning to get to her job at 8:00 A.M. She

usually leaves her job at 4:00 P.M., and arrives home around 6:00 P.M., except on Saturdays when she works a half day. She does the washing and ironing for herself and child after she arrives home, and also helps her mother with the household chores.

The father of the child has never driven to Lebanon to return the child to the Brocks, but the Senior Brocks have always been the ones to call for the child.

Susan testified that her former husband had never actually done any work while they were married, but had lived off the bounty of his father. She also testified that it was the Senior Brocks who had made the $20.00 per month support payments.

When she drives to Albertville, Alabama, to pick up her child after his visits to the Brocks, she does not get back to her parents' home until around six or seven P.M. She then must bathe the child, put him to bed, and then do some washing and ironing. These trips are particularly arduous on her because she suffers from car sickness.

Her actual take home pay is about $70.00 per week. She pays her mother $60.00 per month as board for herself and child. She has payments of $75.00 on her car to make each month, and the costs of gasoline in commuting to Nashville and parking expenses in Nashville while at work, and the cost of her lunches.

In answers to interrogatories, the husband testified that his education consisted of high school, one year in a junior college and one semester at the University of Alabama. In this connection, Susan testified that at the time of their separation in April, her husband was not enrolled in the University, he had no occupation, and "he was just residing down there." At the time of their divorce in November her husband "was in the category of working for his father."

In his answers to the interrogatories, James Marvin Brock, Jr., further stated that since March 1964, he has been employed by the Brock Pepper Company, then by the Police Department of the City of Albertville for several months, and at each of these employments, he earned approximately $50.00 (we presume per week). He is presently employed by the Brock and White Pepper Company at a salary of $40.00 per week; that he married in August 1964, and that he does not own the home in which he presently resides, nor does he pay rent thereon.

It was stipulated that Brock, Jr., resigned his job as policeman for the City of Albertville after a few months of employment, and that his salary as policeman was $220.00 per month.

After the testimony of Susan had been written up, the Register submitted it, and all the other evidence to the court, with appropriate notes of testimony by the respective parties.

Thereafter the court entered a decree which in effect continued the custodial provisions of the former decree, except that the former decree was amended to provide that Susan might call for the child at 2:00 P.M., instead of 5:00 P.M., while he was with the Brocks on the weekends.

The court further decreed that:

"* * * the matter of whether or not or to what extent the sum now being paid by the defendant father for the support of said child should be increased is hereby referred to the Register, who is authorized to decide and report on such issues on the testimony already taken, if in his reasonable judgment such evidence is sufficient for a determination, and he will report his findings promptly, letting his report remain on file for five days for objections and exceptions, and all other relief sought in said petition as amended be and the same is hereby denied, except that the costs of the proceedings are hereby taxed one-half to petitioners and one-half to defendant; further orders and decrees will await the coming in of said report."

The Register thereafter duly submitted his report which in parts pertinent to this review reads:

"Testimony presented before the Register shows that the minor child of the parties is now enrolled in school and now has more expenses. It was also shown that Petitioner-Complainant is now employed and is earning $350. per month. Respondent's income is shown (in answers to interrogatories) to be about $40.00 per week, although it had been as much as $220.00 per month (letter from City Clerk of Albertville, filed as stipulated). It appears to the Register that at the present time no change is needed in the amount being $20.00 per month as agreed on by the parties during the month of February 1964."

Exceptions to the Register's Report were filed by the appellant, various and appropriate grounds being assigned in support of the exceptions.

After a hearing upon the exceptions, the court entered an order overruling the exceptions and confirming the Register's Report, the court writing:

"The evidence in this case was heard orally by the register. Where the Register's finding of fact is based upon testimony of witnesses orally before him, that finding is presumed to be correct and must prevail unless it is clearly and palpably wrong, and, if there is reasonable doubt as to whether or not such conclusion is correct, it should not be overturned. Fricke v. City of Guntersville, 257 Ala. 442, 59 So.2d 590; Campbell v. Campbell, 252 Ala. 487, 41 So.2d 185; Buttrey v. Buttrey, 218 Ala. 268, 118 So. 282.

"The question before the court is not whether the court's opinion and the register's report coincide, but whether or not the register is clearly and palpably wrong. This the court cannot say that he is wrong in this matter. The register's report is, therefore, due to be confirmed by the court."

We are in accord with that portion of the decree continuing the custodial provisions of the former decree. It would seem that the best interests of the child dictate this conclusion. Susan herself testified that the child is happy and well adjusted in the Baird home. Her only basis for changing this arrangement is her desire to establish a separate household of her own. She would rent a house, and employ a housekeeper. She owns no furniture other than a portable television set and two bunk beds. She estimates that the rent on a house would be $90.00 to $125.00 per month, utilities probably $50.00 to $60.00 per month in the winter months, salary of a housekeeper $100.00 per month, groceries $60.00 to $75.-00, telephone, etc. This assumes that a suitable house could be rented and furnished, and a suitable housekeeper procured. While Susan's wish to establish a home for herself and young son may be understandable, it is under present conditions evanescent and impracticable. A prior decree concerning custody of a child is not subject to change merely by the desire or changed attitude of one of the parties. Messick v. Messick, 261 Ala. 142, 73 So.2d 547; Anonymous v. Anonymous, 277 Ala. 634, 173 So.2d 797.

However, we think that the court below erred in confirming the Report of the Register as to support payments for the child.

A Register's (or Master's) Report should furnish facts necessary to enable the court to proceed to a final decree on the merits of the case. Lang et al. v. Brown, 21 Ala. 179, at 190. Here the Register's Report was entirely conclusionary, with no explanation for the conclusions reached. In fact the report is self-contradictory in that the Register finds that the child "is now enrolled in school and now has more expenses" and yet finds that no change is needed in the amount of $20.00 per month for the support of the child, despite the fact

that the support sum of $20.00 per month, under the terms of the agreement of the parties incorporated in the former decree, was to be re-negotiated when the child was enrolled in school.

■ We do not know why the Register saw fit to set forth the amount of earnings by Susan. A father is primarily bound by the laws of the state, and by basic morality, to support his minor children. See 15A Ala. Dig., Parent and Child, ☜3.1(2) for innumerable authorities. The fact that Susan has shown the fortitude, ambition, and energy to work in an attempt to support herself and young son should not serve as a basis for penalizing her nor to relieve the father of the duty primarily cast upon him of supporting his child. That he has been irresponsible in fulfilling this duty is apparent from the record. Susan testified that the $20.00 per month support payments have been made by his parents. Though present at the hearing, he did not see fit to testify. He had full knowledge of the facts. The rule in such circumstances is that an inference is created that he refrained from testifying because the truth, if made to appear from examination of him as a witness, would not aid his case. Payne v. Crawford, 102 Ala. 387, 14 So. 854.

■ It is common knowledge that in today's economy labor is in short supply. It seems unrealistic that an able-bodied young man is unable to secure work paying more than $40.00 per week, unless he be content to live upon the bounty of his father and thereby shirk and evade the duty of support owed his child. In the face of this outstanding responsibility he has remarried. He lives in a home he does not own, and upon which he pays no rent. The source of this beneficence is not shown by the record.

■ While the court cannot compel one to work (see Brady v. Brady, 144 Ala. 414, 39 So. 237), nevertheless capacity to earn is a factor that may be considered in determining the amount of support to be furnished by a father to his minor child. See Epps v.

Epps, 218 Ala. 667, 120 So. 150; Farrell v. Farrell, 196 Ala. 167, 71 So. 661.

As before stated, the Register's Report is purely conclusionary and fails to furnish any basis for its affirmation by the court. For this reason the decree affirming the Register's Report is due to be remanded for further consideration.

Further, in Sims, Alabama Chancery Practice, at Sec. 596, it is set forth that "the only limitation upon the power of the court to make a reference, is that it cannot rid itself of determining the principle equities involved."

■ If a court refers a part of the chief equity of a case to a Master for determination, without the consent of the parties, the result would be to deprive a party of a judicial hearing. See Reed Bros. Stone Co. v. Pittman Construction Co., 20 Tenn.App. 552, 101 S.W.2d 478.

Here all the evidence had been submitted, and the Register had filed the same with the court. The court, after entering a decree disposing of the custody of the child, then referred to the Register "who is authorized to decide and report on such issues on the testimony already taken" the question of the amount of support for the child. This ultimate issue was one of law to be decided by the court which already had before it all the evidence.

■ A Register's Report on a reference expressing the Register's judgment on questions of law, is in this aspect not entitled to the legal weight and presumptions accorded his findings of fact. Hale v. Cox, 240 Ala. 622, 200 So. 772.

■ It is our conclusion that the lower court erred in referring to the Register the matter of deciding whether the amount of support payments should be increased, a chief equity in the cause, and in thereafter confirming the Report of the Register on the basis that his findings are presumed to be correct, this for the reason that no such presumption attaches to the Register's Re-

port as to questions of law, but only as to questions of fact, and the net effect of such procedure is to refer the chief equity, or an important part thereof, to the Register for decision.

The court in its decree affirming the Register's Report taxed the costs equally between the complainant and the respondent, and denied her prayer that her attorney be allowed a reasonable fee for services rendered her in this proceeding.

 The court had full authority to award a reasonable attorney's fee. Keith v. Paden, 255 Ala. 294, 51 So.2d 9. True, such matter is largely in the discretion of the trial court. Here, however, Susan's efforts to renegotiate the support payments had been unsuccessful. It was necessary for her to resort to judicial aid in her attempt to compel a renegotiation. Counsel to aid her was essential. Under these circumstances it appears to us that refusal of reasonable counsel fees to complainant must be considered an abuse of discretion, and we hold that the court erred in denying such fee.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.

### On Rehearing

In brief in support of appellant's application for rehearing, counsel urges our reconsideration of the effect of our opinion in affirming the lower court's decree in the aspect of not lifting from the appellant the obligation to live in Lebanon, Tennessee, if the child support payments were to continue, and in not here entering a decree that the appellant be relieved of the obligation to transport the child to Alabama to visit the father and grandparents.

 These provisions were incorporated into the decree of 11 March 1964, as a result of a solemn and firm agreement by the appellant and appellee, and their respective parents during the pendency of contempt litigation in which much testimony had been taken. The object of the agreement and its incorporation into the decree appears to have been for the welfare of the child. The appellant now argues that Susan's change of attitude, i.e., her procuring work and her desire for a separate home, is such a change in condition as would necessitate a modification of the decree in this aspect. Considering as paramount the welfare of the child, we are not in accord with these contentions, and adhere to our original opinion in this regard.

Counsel asserts that we did not respond to appellant's assignment of error 18. This assignment reads:

"The court erred in its decree of October 28, 1965, in sustaining demurrers to that aspect of the amended petition which sought to 'destroy or diminish the visitation of said child with its paternal grandparent.' "

It appears from a reading of this record that regardless of the ruling on demurrer the appellant had proof of this aspect under the evidence.

In argument in brief on original submission, counsel for appellant has argued in extenso that grandparents, as such, have no legally enforceable rights of visitation and part-time custody. In no wise was the sustaining of the demurrer argued other than at the conclusion of the argument when it is stated that "the decree of the court sustaining the demurrers in this aspect of the petition should be reversed."

Counsel cites two propositions of law in support of his argument under assignment 18. Each are short quotations from Sections 14 and 63 of 39 Am.Jur., Parent and Child, to the effect that grandparents have no legally enforceable rights to visitation or part-time custody of a child, and that any moral duty there may be upon a parent to send his child to visit its grandparents is not a subject of judicial enforcement.

 While ab initio the grandparents may not have rights to custody, counsel's ar-

gument overlooks the provisions of the decree in this aspect which incorporated the agreement of appellant and her parents and the respondent and his parents. Legal validity and enforceability were thereby created, and counsel for appellant became one of the signatories on the bond insuring faithful performance of the agreement and decree as to the deliverance and relinquishment of the custody of the child between the parties as provided in the agreement and decree.

Further, the child had been in the Brock, Sr., home for a number of years, and it is apparent that ties of affection existed between the senior Brocks and the child.

■ As stated in Kewish v. Brothers, 279 Ala. 86, 181 So.2d 900:

"Ties of affection springing from years of association of a child with its custodian, particularly if the custodian be a relative, cannot but be given regard in determining the welfare of the child."

Counsel requests we respond to his assignment 13, which we pretermitted in our original opinion. This assignment asserts as error the failure of the Chancellor to decree that the Brock grandparents be liable for increased support payments beyond the agreement and decree of 28 October 1965. Counsel states he has found no precedent to support this argument, nor have we. We consider this assignment without merit.

Counsel complains that we did not write to assignment 20. In his original brief counsel states that:

"This assignment of error raises a point of no practical importance to anyone."

We agree with that observation, and feel no useful purpose would be served by writing to it.

One or two other matters are argued in appellant's brief on rehearing. We have examined these alleged errors and consider them without merit.

Application overruled.

SIMPSON, MERRILL and COLEMAN, JJ., concur.