[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1128 
This is an appeal under Rule 5, ARCP from an interlocutory order of the Circuit Court of Walker County which held that by virtue of the desertion of the father, the plaintiff-mother of a deceased child was the proper party under Title 7, § 118,Alabama Code, to bring this action for wrongful death. We reverse and remand with directions.
The plaintiff, Margaret Lollar Odom, filed a complaint on May 5, 1976 under Title 7, § 119, alleging the death of her minor child, Gary Lollar, in an automobile accident on March 3, 1976. She also alleged her previous divorce from Gary's father; the award of custody of their three children, including Gary; the divorce decree which required their father to make "reasonable monthly support payments;" that these had not been made "as so required;" and that their father had not exercised the rights of visitation awarded to him in the divorce decree. Though she did not allege in so many words that the father had deserted his deceased child, the plain intendment of her allegations was to place her within the standing of a mother to maintain an action for wrongful death under Title 7, § 118, Alabama Code,viz.:
 A father, or in case of his . . . desertion of his family, . . . the mother may sue for an injury to a minor child, a member of the family.
A jury trial was demanded.
To this complaint the defendant Thorne filed a motion to dismiss alleging three grounds: (1) failure to state a claim upon which relief can be granted; (2) the action was not prosecuted in the name of the real party in interest; (3) the father is the proper party plaintiff. On the hearing of this motion testimonial evidence, depositions and exhibits were introduced, after which the trial court entered an order denying the motion on two grounds: (1) desertion by the father; and (2) the unconstitutionality of Title 7, § 118 by giving a preference to the father over the mother. In this situation, then, we will treat the motion to dismiss as a motion for summary judgment, see Rule 12 (b), ARCP.
Initially, we hold that the trial court's order declaring Title 7, § 118 unconstitutional was erroneous. Contrary to his finding, that statute does not give the father the absolute right over the mother to file such an action, but a conditional right as the remainder of our opinion will show. Additionally, we disagree that the statute imposes an arbitrary distinction. Under the Fourteenth Amendment to the United States Constitution, states may treat different classes of people differently when the *Page 1129 
classification rests upon a fair and substantial relation to the object of the legislation. Montgomery County v. Walsh,274 Md. 502, 336 A.2d 97 (1975); Royster Guano Co. v. Virginia,253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920). The object of § 118 is to provide a right of action for the parent's damages for loss of services, expense of treatment, etc. for the child's injury. Section 119, by the same token, allows a right of action in cases of wrongful death. The classification imposed by § 118 is not arbitrary, because the legislature has recognized that, between the two parents, the father has the primary and continuous duty to support and maintain his minor children reasonably according to his means. Thomason v.Thomason, 53 Ala. App. 206, 298 So.2d 627 (1974); Brock v.Brock, 281 Ala. 525, 205 So.2d 903 (1967); Stovall v. Johnson,17 Ala. 14 (1849). This continuing obligation gives the father the priority in receiving any damages because of the injury or death of the child.
The threshold question is whether the evidence presented to the trial court made a material factual issue of the father's alleged desertion upon which reasonable persons might differ. A summary of the evidence follows:
Gary Clay Lollar, father of the deceased child, testified that he was thirty-two years old, lived in Jasper, and presently employed by Alabama By-Products, Mary Lee No. 1, Gorgas (a coal mine). He and the plaintiff were married at one time and had three children whose ages at the time he and plaintiff were divorced, were five, four and two. Their divorce decree (dated May 22, 1972) was admitted into evidence and disclosed the ground of their divorce to have been incompatibility. It provided for his visitation with the three children at reasonable times and places, and the payment by him to plaintiff of "a reasonable sum of money for the support and maintenance of said children; and if the parties cannot agree on a reasonable sum, the Court retains the jurisdiction to set such. . . ."
According to plaintiff's former husband, he and plaintiff reached an agreement on a reasonable sum (as provided in the decree). He agreed to pay plaintiff fifty dollars every two weeks, and began these payments in 1973, first in cash and thereafter by check. There is evidence of forty-one checks, issued from March 15, 1975 to August 27, 1976, each in the amount of fifty dollars except for five: one for five dollars, two for three dollars, one for fifty-six dollars, and one for fifty-five dollars. At the time of the child's death, Gary was making the fifty-dollar support payments every two weeks for the three children. He also testified that he bought the children's clothes year round, and purchased a TV set for them in 1973. He would visit the children on Friday and when school was out he would take them home with him to spend the night. He visited with the children on Christmas and bought them Christmas and birthday gifts. On the deceased child's last birthday he took him to town, bought him something for his birthday, and got something to eat. After his former wife remarried in 1974 or 1975 he did not visit the children in the plaintiff's home as much because he did not get along with her new husband.
He described some of their early married life, where they lived, his various occupations, their separations, and his continued contributions to the children's support. He described his visits to see the children at the plaintiff's home when they were not available, and his visits to their school and talks with their teachers to determine their school needs. He visited them over thirty times a year, carried them to various places, and had carried groceries to them.
Several witnesses testified on behalf of the plaintiff. Her brother, Richard Jones, stated that after plaintiff and Gary Lollar separated the children needed clothing, most of which they obtained from plaintiff's family. It was his testimony that Lollar did not visit or take care of the children after the divorce, but he did not know whether Lollar visited when he was not at their home.
The plaintiff herself also described their marital past, their moves, their separations, *Page 1130 
and her former husband's contributions to the children's support which, she stated in March or April of 1972 was nothing. The record of her testimony is unclear regarding the sums of money contributed by Lollar and the specific periods of time; however it does establish that when they separated for the last time he was contributing thirty dollars each week for the support of herself and her children, and later reduced that to twenty-five dollars per week because he said he had switched jobs and didn't make as much money. She also stated that he had not paid support for six months at the end of 1972, although he was contributing after she remarried.
She did not know the amount Lollar was making at the mines but that when she asked him about it he said he didn't make any more than he was [had been] making. She did not know of Lollar providing school supplies. She acknowledged his purchase of shoes on an occasion, but he contributed nothing other than the fifty dollars which he had been paying every two weeks for the children since January or February of 1974.
The plaintiff admitted that in a deposition she had given previously her statement that Lollar had agreed, and they had come to an understanding, on a reasonable amount of child support, and that their understanding meant that he would pay a hundred dollars a month. He lived up to it since January, 1974, right up to the time the little boy was killed. She also testified that their agreement for support called for Lollar to pay her one-half of what he made for the support of the children. Her two depositions were introduced into evidence. It will suffice here to state that these, together with her testimony in open court, conflict with regard to the terms of their agreement and the amount of support actually paid or extended by Lollar to the children. As already indicated, the matters of his visitations and attentions to the children were also disputed.
The legislative language of Title 7, § 118, which makes the right of the mother expressly subject to the conditions named, has been the subject of several previous judicial interpretations. See, for example, Southern Ry. Co. v. Carlton,218 Ala. 265, 118 So. 458 (1928); Ex parte Roberson, 275 Ala. 374, 155 So.2d 330 (1963); Adkison v. Adkison, 286 Ala. 306,239 So.2d 562 (1970). In each of these the court has concerned itself with the meaning of the term "desertion" as used in the statute. On that point this Court in Carlton stated:
 The term `desertion' may have a legal meaning somewhat modified by its context in the statute. As here used, the question of maintenance and support of the family within his reasonable means is of manifest, if not controlling, importance, on the issue of desertion.
In Roberson, this Court referred to Peoples v. Seamon,249 Ala. 284, 31 So.2d 88 (1947), which stated that in an action for wrongful death of a child leaving a surviving father, the suit "should be brought by the father `unless the father has by desertion . . . ceased to perform the parental duty of maintenance . . .' under Title 7, Sec. 118."
Adkison is the latest case to come before this Court on the question, and in that case this Court equated "desertion" with "abandonment":
 `"* * * 1 Abbott's Dictionary of Terms and Phrases defines `abandonment' as the relinquishment, surrender, or disclaimer of one's rights, and says: `But the surrender of a relation, involving as it does the disclaimer of duties more prominently than that of rights, is better styled desertion,' and defines `desertion' as `the abandonment of a relation or service in which one owes duties; the quitting, wilfully and without right, one's duties; the withdrawal, unexcused, from the obligations of some condition or status.'"'
It also perused the meaning of "voluntary abandonment" as used in Watkins v. Kidd, 261 Ala. 463, 464, 75 So.2d 87, 88:
 `* * * To constitute voluntary abandonment, authorizing a decree of divorce, there must be a final departure, without the consent of the other party, without sufficient reason therefor, and *Page 1131 
without the intention to return . . .'
The Adkison court, specified the applicable test as whether the desertion "existed at the time of the death of the minor, regardless of whether a state of desertion existed at sometime prior thereto." Ibid, 286 Ala. at 309, 239 So.2d at 565. And whether that state of desertion existed, according to that Court, would be determined by the conduct of the father. Quoting from Vol. 1, Am. Jur., Adoption of Children, § 42, the opinion states:
 `We do not construe the conduct of the father to evince a settled purpose to forego all parental duties and relinquish all parental claims to the child. . . . The father's failure to comply with the order for support of the child, under the circumstances here presented, and his failure to visit the child under existing misunderstandings in the family, does not in our judgment, constitute abandonment within the purview of Section 3, Title 27, Code of 1940.'
Is the evidence upon which the trial court based his order without dispute on the issue of desertion? We think not. According to the defendant's evidence, the former husband was complying with the support agreement made with the plaintiff, his former wife, which agreement had the sanction of their divorce decree. His evidence of gifts to the children, including the deceased child, together with his reasons for his reduced visitations, placed in issue the question of any settled purpose on his part to abandon his parental duties. The payment of support, as stated in Carlton, is of manifest importance on the issue of his "abandonment" or "desertion." Whether the amount he paid comported with their agreement, or was so insufficient, with the other circumstances, as to constitute abandonment of his parental duties, is a disputed matter upon which reasonable persons might disagree. The fact of the father's working in the mines, and the fact that his support payments equated $1.19 per child per day, while perhaps demonstrating some degree of disregard for their welfare, as well as raising questions concerning the minimal level of subsistence, would not conclusively establish desertion when compared with the other evidence. There is no direct evidence in the record on the amount of Lollar's earnings from the mine, or upon the regularity of his employment. For all we know, his support payments may be "reasonable" according to his circumstances.
We conclude that a genuine issue of material fact was presented on the issue of desertion, and it was error, therefore, for the trial court to deny the defendant's motion to dismiss which was tantamount to a summary judgment on that issue. First National Bank of Birmingham v. Culberson,342 So.2d 347 (Ala. 1977); Loveless v. Graddick, 295 Ala. 142,325 So.2d 137 (1975); Rule 56 (e), ARCP; 6 Moore's Fed. Prac., par. 56.15 (2nd ed. 1971).
It is clear that one or the other of these parents has the necessary standing to maintain this action. If it later develops that the father has the standing, a jury trial prosecuted solely by the mother would be of no avail and would raise serious questions of res judicata on the entire cause of action. If the mother is the proper party, nevertheless her standing as such should be decided as any other fact in dispute, without regard to any issue of liability regarding the alleged accident.
Under his motion to dismiss the defendant contends that the father is the proper plaintiff. Having found that this is an unresolved factual issue, we also recognize that the action should be "prosecuted in the name of the real party in interest"; indeed should the father have been found to be the proper parent, the trial court could not have dismissed the action. Rule 17 (a), ARCP.
Accordingly, we believe the proper course of action is for this case to be remanded to the circuit court in order to allow the defendant to join the father as a party-plaintiff should defendant desire to follow that course of action. Rule 19 (a), ARCP. Or the father may wish to join as a *Page 1132 
party-plaintiff on his own initiative. Such a procedure will serve to preserve the cause of action for whichever of the parents is later able to sustain the standing to maintain the action, while at the same time preserving the defendant against any risk of incurring a double or inconsistent obligation because of his claimed liability. A reasonable time for such a joinder shall be allowed by the trial court for any such action, under Rules 17 (a) and 19 (a), ARCP.
Should any such joinder occur, and in order to resolve standing as an interlocutory issue, the trial court, at the instance of one of the parties or upon its own initiative, may sever the issue of standing for resolution before proceeding to the merits of the alleged liability of the defendant. Rule 42 (b), ARCP, allows the latter procedure.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, FAULKNER and SHORES, JJ., concur.