Former husband appeals from decrees rendered by the Circuit Court of Limestone County in a domestic relations case. The appeal in Case No. Civ. 1442 is from the final decree of divorce dated September 14, 1977 and from the decree on rehearing dated December 20, 1977. The appeal in Case No. Civ. 1442-B is from that portion of the decree dated March 8, 1978 which denied the husband's petition to modify the divorce decree. We affirm in each case.
The husband's primary contention on appeal is that the trial court abused its discretion in granting to the wife excessive awards of child support and alimony and in ordering an inequitable division of property and allocation of debts. He contends that the trial court further abused its discretion by refusing to modify these awards of child support and alimony because his net income is simply insufficient to pay these obligations.
The amount of child support is a matter for the discretion of the trial court. Phillips v. Phillips, 277 Ala. 2,166 So.2d 726 (1964). Likewise, the award of alimony and the division of property on divorce are matters within the discretion of the trial court, and each case must be decided on the basis of its own facts and circumstances. Stewart v. Stewart, Ala.Civ.App.,341 So.2d 490 (1977); Elsevier v. Elsevier, Ala.Civ.App.,355 So.2d 382 (1978).
Thus, the issues raised by the husband necessitate a review of the facts out of which these appeals arose in order to determine whether or not the trial court has abused its discretion. The relevant facts, as revealed by the rather lengthy records in these cases, are as follows.
The parties herein involved were married in 1957. The husband shortly thereafter entered veterinary school at Auburn. His education there was funded by the GI Bill, his wife's working full-time and his working part-time. The parties moved to Athens, Alabama in 1961, where the husband set up his veterinary practice and where the parties have since resided.
Four children were born of their marriage. The elder son has reached the age of majority. The younger son and the two daughters are minors.
When the parties were married they had little or no property. Over the years they have accumulated considerable property, to wit: (1) a home on 5.5 acres of land in Limestone County, valued at $65,000 and subject to a mortgage with an outstanding balance of $9,733; (2) a 19.4 acre parcel of land adjoining the home, valued at approximately $10,000 and apparently unencumbered; (3) a 289 acre farm with a house purchased in 1972, valued at $100,000 and subject to a mortgage with an outstanding balance of $44,400; (4) land upon which the husband's office and animal clinic is located, purchased in 1966 and subject to a mortgage with an outstanding balance of $17,107 (the record indicates that various estimates of the value of this property range from $67,800 to $100,000); (5) at least one cemetery lot; (6) household furniture and fixtures, apparently unencumbered and valued at $7,675; and (7) the wife's 1975 Pontiac automobile, upon which is owed a debt of $3,100, and several other motor vehicles. In addition to the debts listed above, the husband also owes to the bank open notes in the amount of $26,800. Consequently, his total fixed debt, secured and unsecured, is $101,140. *Page 283 
The record reveals that the net worth of the husband is subject to some dispute. Plaintiff's exhibit nine, submitted to the trial court by the husband, shows his net worth to be $171,700. However, in a financial statement submitted by the husband to Central Bank (defendant's exhibit eleven), his net worth as of June 1, 1977 is listed as $272,673.
The record indicates that during the course of their marriage the parties began to have disagreements concerning various matters, primarily involving expenditures and discipline of the children. Dr. Goodman moved out of the marital abode and into the house on the 289 acre farm in November 1975. He has resided there since that date. He filed a complaint with the trial court in May 1977 seeking inter alia a divorce on the grounds of incompatibility and irretrievable breakdown of the marriage and an equitable division of the marital property. The wife's answer to this complaint contained a counterclaim asking for a divorce on the ground of adultery, as well as custody of the children, child support, division of property, alimony and attorney's fees.
The trial court heard evidence ore tenus in this cause. Dr. Goodman testified that in his opinion the three minor children could be properly raised with monthly child support payments of $165 per child. He indicated that he could pay this amount "without any problem at all." He further stated that he was presently paying the mortgage payments, taxes, and fire insurance for the marital home. He admitted having an adulterous relationship with Dr. Sue Kirkpatrick, a university professor. Dr. Kirkpatrick, called by the husband as a witness, confirmed this fact in her testimony.
The record reveals that on one occasion in the fall of 1975 while Dr. Kirkpatrick was visiting at the farmhouse with Dr. Goodman, Mrs. Goodman came to the farmhouse with a pistol and a hammer. On another occasion Mrs. Goodman entered the farmhouse while her husband was away and had taken or destroyed items of clothing belonging to Dr. Goodman and to Dr. Kirkpatrick, and had damaged a sofa given to her husband by Dr. Kirkpatrick.
Mrs. Goodman testified that in the two years prior to the separation, her husband had given her $900 a month to run the household. From this amount she paid the mortgage payment on the home, utilities, groceries, clothing, etc. for the six persons in the family. She testified to current needs of approximately $1,500 per month, and quoted her husband as saying during the year prior to the separation that it took $25,000 per year for the family to live on.
After hearing this testimony the trial court issued a decree dated September 14, 1977 dissolving the marital relationship on the ground of incompatibility of temperament. Mrs. Goodman was awarded $300 per month alimony, custody of the three minor children, $200 per child per month child support for the three minor children, and $1,750 in attorney's fees. Dr. Goodman was awarded title to the 289 acre farm property and to the animal clinic property. Mrs. Goodman was to have title to the family house, the 5.5 acres upon which it is located, the adjoining 19.4 acre parcel, and to the cemetery lot. Dr. Goodman was to assume responsibility for all liabilities including mortgages on the real estate existing at the time of trial.
Mrs. Goodman was also to have the 1975 Pontiac automobile and all the household furnishings, appliances and furniture (with certain specified exceptions). Dr. Goodman was to have the farm equipment and vehicles, the animal clinic equipment, the horses and cattle, and his personal belongings.
Dr. Goodman was granted the right of visitation with the children at any and all reasonable times. The decree states that "the oldest child is presently attending Auburn University and Dr. Goodman has expressed a willingness to provide him with a college education." Dr. Goodman was further required to keep in force certain life insurance policies with the children as beneficiaries. He was also required to pay all the reasonable medical and dental bills of the children. *Page 284 
Dr. Goodman applied for a rehearing alleging inter alia that the awards to the wife for alimony and child support were excessive; and that the division of property and the requirement that he assume responsibility for the real estate mortgage on the property awarded to the wife was inequitable. This application for rehearing was later amended to allege that the wife had become gainfully employed since the date of the divorce decree.
The following testimony was given at the hearing on December 20, 1977. The husband's accountant, Mr. Ralph Dowdy, testified that the husband's financial records reflect that from January 1, 1977 through November 30, 1977 Dr. Goodman had taken the amount of $10,350.60 as net income from the drawing account of his veterinary practice; that Dr. Goodman's projected net income for 1978 is $11,000, with an estimated income tax of $2,428; that his projected total obligations for 1978 would be $62,933, or $36,136 if each of the open notes was renewed; and that even if Dr. Goodman's net income increased by ten percent in 1978, he would still have only about half of the amount required by the obligations to his wife and children.
Dr. Goodman testified that in the four months since the divorce decree he had not paid the full amount of child support and alimony required by that decree ($900 per month) because he "didn't have the money" to do so. He stated that he had been paying approximately $500 per month to the wife and had paid $500 of the required $1,750 for the wife's attorney's fees. He also stated that since 1961 his veterinary practice had changed from work with cattle to the more profitable work with small animals and pleasure horses, and that his 289 acre farm would probably show a profit of about $500 for the year.
The record of the December rehearing reveals that since the original divorce decree had been issued the following events had occurred. Dr. Goodman had sold livestock for $6,928, $550 of which belonged to the children for their cattle and $5,901.50 of which was paid to the Federal Land Bank. He had also earned $400 lecturing for one quarter at the University of Alabama in Huntsville, but had discontinued that job. The elder son, who had dropped out of college, married and begun working, was no longer a dependent. Mrs. Goodman had taken a job in November of that year as a receptionist for a dentist in Decatur. She was earning a weekly net income of $76.12 with commuting expenses of abut $15 per week. This was the first job she had held since helping her husband through college.
The testimony, joint income tax returns, and other exhibits introduced into evidence at the original hearing and the rehearing reveal the following facts about these parties' financial situation from 1972 through 1976:
 Business
 Gross Farm Depre- Net
 Income Loss ciation Income
 ------ ---- -------- ------
1972 $56,528 $ 2,122 $5,590 $10,511
1973 59,326 10,066 5,807 6,250
1974 56,518 10,475 5,424 2,810
1975 54,639 5,798 3,559 6,792
1976 48,621 5,378 3,521 2,412

On cross examination at the rehearing Dr. Goodman's accountant agreed that the kind of farm business owned by Dr. Goodman, which loses money every year, was generally set up to do so and is "a nice way to write off expenses."
Dr. Goodman testified that their gross income for those years was diminished by farm losses and depreciations arising from improvements to real estate; that due to those improvements and to inflation the real estate for which he had borrowed money to purchase had enhanced in value tremendously since the time of purchase; and that he and his wife had been living in part on borrowed money and the money written off as depreciation of equipment at the animal clinic, without being able to set aside cash for the replacement of this depreciated equipment.
The trial court's decree of December 20, 1977, issued after the rehearing, modified the divorce decree in certain respects, relieved the husband of responsibility for a certain debt owed by the wife, established specific times for the husband's visitation *Page 285 
with the children and awarded a fee to the wife's attorney. The terms of the original decree pertaining to alimony, child support and division of property remained unchanged. On January 31, 1978 the husband appealed from the decrees of September 14, 1977 and December 20, 1977.
On February 27, 1978 the husband petitioned the trial court for modification of the divorce decree and for issuance of a rule nisi to the wife ordering her to show cause why she should not be held in contempt of court for her interference with the visitation rights of the husband. This petition stated that the husband was in arrears in child support and alimony payments, and that he was unable to make the ordered payments without a complete liquidation of his assets. The petition further alleged a substantial change of circumstances regarding the wife's employment and income status which would justify a modification of the alimony and child support awards. The petition also requested a stay of execution on any outstanding deficiencies in these payments pending either a further hearing by the trial court or a determination of the appeal by this court.
The wife's answer denied that she had interfered with the husband's visitation rights, denied there had been any material change of circumstances, and further petitioned the court for issuance of a rule nisi to the husband ordering him to show cause why he should not be held in contempt of court for his failure to pay the required amounts of child support and alimony. The wife's petition also requested a stay of the husband's petition pending a determination by this court of his earlier appeal.
The testimony given at the hearing on the petition for modification on March 8, 1978 revealed the following additional facts. Mrs. Goodman's job as a receptionist had lasted about seven weeks. She had begun work at her present job in January 1978 and earned a net pay of approximately $470 per month. Her salary from this job plus the $300 alimony and $600 child support payments due from her husband, if paid, would give her a monthly income of $1,370.
Dr. Goodman testified that the maximum cash he could get out of his business for both himself and his wife and children to live on was $750-$800 per month, without selling his assets or increasing his earnings. He also testified that his cattle were currently worth about $5,000.
Following this hearing the trial court issued a decree dated March 8, 1978 denying the husband's petition to modify. The trial court also adjudged both parties to be in contempt of court. The husband's contempt citation was based on his failure to comply with the previously ordered payments of child support, alimony and attorney's fees. Finding that the husband had sufficient means with which to make these payments, the trial court ordered the register to issue and retain a warrant for the husband's arrest, to be issued upon the husband's failure to pay within ten days the arrearage in the amount of $2,231 owed to the wife and the $875 in fees owed to the wife's attorneys. The wife's contempt citation was based on her refusal to comply with the court's earlier orders pertaining to visitation rights of the husband. She was fined $50. The decree further ordered the husband to pay $250 toward attorney's fees for the wife.
The husband's motion for a stay of the decree of March 8, 1978 pending determination of his appeal by this court was overruled by the trial court. The husband appealed from the trial court's decree of March 8, 1978.
Our review of the issues raised by these appeals is predicated upon some familiar principles of law. The well established rule on appeal from a decree of the trial court rendered upon a hearing of the evidence ore tenus is that such a decree is presumed correct and will be set aside only if it is unsupported by any credible evidence and is plainly wrong.E.g., Fultz v. Fultz, 47 Ala. App. 502, 257 So.2d 362 (1972).
The division of property, grant of child support and award of alimony are matters within the sound discretion of the trial court, and are not to be reversed on *Page 286 
appeal absent a manifest abuse of discretion. Phillips v.Phillips, Ala.Civ.App., 344 So.2d 786 (1977).
The amount of alimony to be awarded to the wife in a divorce case is addressed to the sound discretion of the trial court, as is the amount to be paid for support of the children, and the exercise of such discretion will not be revised on appeal unless the court is deemed to be palpably in error. Stilwell v.Stilwell, Ala.Civ.App., 357 So.2d 355 (1978).
Likewise, the modification of a prior decree for support and alimony, based upon changed circumstances of the parties, is largely a matter within the judicial discretion of the trial court. The exercise of such discretion is to be disturbed on appeal only if from a review of the evidence this court finds in the decree such an abuse of discretion as to be plainly and palpably wrong. The burden of proving a material change in circumstances sufficient to warrant a modification of a previous decree relating to child support and periodic alimony is on the petitioner. McEntire v. McEntire, Ala.Civ.App.,345 So.2d 316 (1977).
After reviewing the foregoing facts we are not persuaded that the trial court abused its discretion either in the awards granted by the divorce decree or in its refusal to modify that decree.
We said in Hendrix v. Hendrix, 56 Ala. App. 178,320 So.2d 684, cert. den. 294 Ala. 758, 320 So.2d 687 (1975) that the award of alimony in gross or property division made to the wife must depend upon the facts and no mathematical formula can determine what is an appropriate award. We noted that cases had sustained awards of from one-third to one-half of the husband's estate and concluded that an award of $60,000, to be paid out of the husband's estate of $123,000, was not excessive.
In the case at bar the approximate value of the home, adjoining acreage and household furnishings awarded to the wife is $83,000. A comparison of this award with either the statement of the husband's net worth as submitted by him to the court in plaintiff's exhibit nine ($171,000) or that submitted by him to the bank as shown in defendant's exhibit eleven ($272,673) reveals no abuse of discretion by the trial court.
The husband cites Travis v. Travis, Ala.Civ.App.,345 So.2d 321 (1977) to support his argument that the award of child support is excessive and for the proposition that the amount of such awards should not be so far beyond his financial ability as to cripple him by compelling him to give up all of his income. In that case we reversed the trial court's decree which required the father to make child support payments each month of $666 on a net income of $680. As the husband correctly points out, the reversal in that case was based on our finding that the trial court's conclusions could have been reached only by disbelieving competent and unimpeached evidence.
Such is not the situation in the case at bar, however. Dr. Goodman himself testified that child support payments of $165 per month per child was a "fair" and "realistic" amount, and that he could pay this "without any problem at all." Moreover, Dr. Kirkpatrick's testimony indicated that after Mrs. Goodman had entered the farmhouse and destroyed Dr. Kirkpatrick's clothing, Dr. Goodman reduced the amount of the alimony/child support check sent to Mrs. Goodman, not because of any financial distress, but rather in order to compensate for the destroyed clothing. In view of this testimony and the circumstances presented in this case we are not inclined to agree that the trial court's award of $200 per month per child was excessive and arbitrary.
Similarly, the award of $300 per month alimony cannot be considered an abuse of discretion under the circumstances in this case. The husband's accountant testified that Dr. Goodman's net income for the first eleven months of 1977 was $10,350.60, and that his projected net income for 1978 was $11,000. Requiring payments of alimony totalling $3,600 annually from such income is neither arbitrary nor excessive. *Page 287 
Furthermore the record reveals sufficient evidence to support the conclusion that the required $900 monthly alimony/child support award would not, as the husband contends, compel him to sacrifice his property in order to pay it.
Nor can it be said that the trial court's allocation of debts was inequitable. The record indicates that Dr. Goodman is a very competent, qualified veterinarian consistently earning an annual income of approximately $40,000-$60,000. On the other hand, Mrs. Goodman has devoted herself to running the household and raising the children for most of the couple's married life. Since the divorce decree she has taken a refresher course in typing and accounting and has worked as a receptionist and as a clerk for a construction company. She remains dependent on her husband for the bulk of her sustenance. In view of these circumstances we cannot say the trial court abused its discretion in requiring the husband to assume the entire debt obligation of the parties.
Furthermore, we think the husband failed to demonstrate a material change of circumstances sufficient to warrant a reduction of the child support or alimony awards. The "changed circumstance" upon which the husband's petition to modify principally relies is the fact of Mrs. Goodman's employment. We think the evidence in these cases would amply support conclusions by the trial court that the divorced mother has shown fortitude, ambition and energy in working to help support herself and her minor children, and that her receipt of the modest earnings from this job should not serve as a basis for penalizing her in order to relieve the father of the duty primarily cast upon him of supporting his wife and children.Brock v. Brock, 281 Ala. 525, 205 So.2d 903 (1967); Code of Alabama 1975, § 30-2-51.
Moreover, the other changes of circumstances revealed by the record of the rehearing — the income received by the husband from the cattle sale and his employment at the university, and the elder son's leaving college and obtaining gainful employment — tend to indicate that the husband's ability to make the required payments has been strengthened rather than weakened.
In sum, we are inclined to agree with appellee that the trial court has held three long hearings on the matters herein contested and has concluded that the burdens imposed on the husband are neither arbitrary or excessive. These cases are affirmed.
Appellee has requested an award of attorney's fee for this appeal. An award of $750 is hereby made.
ATTORNEY'S FEE AWARDED.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.