181 So.2d 491

**E. E. ROSS**

v.

**Mary Jane ROSS.**

**1 Div. 293.**

Supreme Court of Alabama.

Nov. 18, 1965.

Rehearing Denied Jan. 6, 1966.

John W. Drinkard, Linden, for appellant.

Edw. P. Turner, Jr., Chatom, for appellee.

HARWOOD, Justice.

This is an appeal from a decree awarding a divorce to Mary Jane Ross on the grounds of alleged cruelty on the part of her husband, E. E. Ross. .

The evidence presented below shows that Mary Jane Ross and E. E. Ross were married in 1944. At the time of their marriage Mary Jane was 14 years of age, and her husband was 19 years old. He was unemployed at the time, and for the first year of their marriage they lived in the home of his parents. During the marriage the couple moved to several localities where Mr. Ross worked in various jobs connected with saw mills. Eventually he secured equipment and for several years prior to the separation he was self employed in hauling pulp wood.

Four children were born of the marriage, and at the time of the proceedings below, the eldest, Allen, was 19 years of age, Wanda was 16, Richard was 14, and Brenda 13.

Mrs. Ross testified that for fourteen years their marriage has been beset with difficulties which grew much worse the last two years preceding her departure from their home. According to Mrs. Ross, the basis for their difficulties was her husband's continuous charges of unfaithfulness on her part, jealousy, and the financial stresses with which they were always confronted.

Mrs. Ross testified that virtually every day Mr. Ross, during their wranglings, would tell her he was "going to teach her a lesson," and on several occasions he threatened to "beat hell" out of her. At no time did he actually strike her, but she was afraid of her husband because of his violent temper. On one occasion just prior to the time she left she and her mother were in the kitchen when Mr. Ross entered. He complained of never having meals fixed on time, and their argument became violent.

He approached her and "he hit at me and I tried to slip my chair back and it wouldn't slip and I fell off on the floor and he didn't hit me." As to this occasion, Mrs. T. E. Brown, the mother, testified that Mr. Ross came in mad and "he started for her in a mad passion with his hands. Of course she fell backward there and I got up and he didn't go any further."

Mrs. Ross testified that on a Sunday afternoon she had gone for a ride with another woman and was gone for about an hour. When they returned the children told her "Daddy has gone to look for you with the gun." Her husband returned about twenty minutes later, and had the gun with him. They quarreled and she called a deputy sheriff.

On another afternoon she had stopped by a colored woman's house to pick up some clothes that had been left there for ironing. Again her husband went looking for her with a gun. He returned, carrying the gun and wanted to know "where in the hell" she had been.

Mrs. Brown, complainant's mother, testified that as to the Sunday afternoon gun incident, Mr. Ross came to her home afterward and told her he had followed the complainant that afternoon with a gun, and had come into the house with the gun, and stated he had realized he had done wrong.

Mr. Ross testified that he had a gun with him on only one occasion when he went looking for his wife, that is on the Sunday afternoon above referred to; that the complainant had lied to him when she left with a woman companion of whom his wife knew he did not approve because of reports of her misconduct. He further testified he had carried the gun with him because one of the men associates of this woman had threatened him and he did not know who he might run into if successful in locating his wife, and he "didn't go to shoot nobody or nothing like that."

Mr. Ross also denied he had advanced on his wife during the incident in the kitchen

as recounted by complainant and her mother, and stated at no time during their argument in the kitchen had his wife fallen out of a chair.

Under Section 22, Title 34, Code of Alabama 1940, cruelty as a ground for divorce exists "when the other" (party) "has committed actual violence on his or her person, attended with danger to life or health, *or when from his or her conduct there is reasonable apprehension of such violence.*" (Italics ours.)

In Atkins v. Atkins, 268 Ala. 428, 108 So. 2d 166, the wife testified that several years previously her husband had slapped her, and drawn a knife on her and threatened to kill her. Recently he told her just before leaving for a trip that "when I get my gun for you, I will do worse to you than I did Doyle." Before this he had put a son, Doyle, out of the house at gun point. The husband had also threatened to kill himself. The wife testified she was afraid of her husband. In holding the above evidence sufficient to support the decree of divorce. awarded on the ground of cruelty, this court stated:

> "Actual violence on the part of the husband is not necessary to constitute legal cruelty. Any conduct on his part which furnishes reasonable apprehension that the continuance of the cohabitation would be attended with bodily harm to the wife is cruelty. Sams v. Sams, 242 Ala. 240, 5 So.2d 774; Harris v. Harris, 230 Ala. 508, 162 So. 102, 103; Smedley v. Smedley, 30 Ala. 714."

In Harris v. Harris, supra, there were threats of bodily harm by the husband, and on one occasion the husband had pointed a gun at his wife. Thereafter he continued his threats of bodily harm for several months until the wife left the marital abode. There were no acts of actual physical violence. Again, this court held the evidence sufficient to sustain the decree of divorce awarded the wife on the grounds of cruelty.

The evidence shows that for a long number of years there had been almost continuous quarreling between Mr. and Mrs. Ross, accompanied by threats on the part of Mr. Ross. True he had never committed actual violence on her. However, Mrs. Ross testified that Mr. Ross had a violent temper and she was afraid of him and that he was highly jealous and frequently accused her of unfaithfulness. On at least one occasion, if not two, Mr. Ross went in search of his wife with a gun. The weight of his explanation as to why he carried the gun on at least one search was primarily for the trier of fact.

Also primarily for the trier of fact was whether Mrs. Ross' departure from the family abode was because of a reasonable apprehension on her part of danger to her life or health. Assuredly, if a reasonable apprehension was harbored by Mrs. Ross, no rule of law would require her to await actual violence. As stated in Evans v. Evans, 1 Hag.Rep. 35:

> "In a state of personal danger no duties can be discharged; for the duty of self preservation must take place before the duties of marriage, which are secondary both in commencement and obligation."

In the present case we think the evidence sufficient to have warranted the chancellor's conclusions that because of the respondent's conduct the complainant was in reasonable apprehension of danger to her life or health, and further that legal cruelty was sufficiently established to warrant the decree in the premises. Particularly is this true in view of the presumption of correctness to be accorded the findings of the court below before whom the evidence was taken ore tenus.

While errors are assigned relating to the provisions of the decree awarding alimony, child support, and the custody of the three younger children, none of these as-

signments are argued in brief and are therefore not before us for consideration.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.