This is a divorce case.
Plaintiff, Opal Stilwell, filed suit for divorce from her husband, Billy G. Stilwell, in August 1976 in the Circuit Court of Madison County. The grounds for divorce were cruelty, incompatibility, and irretrievable breakdown of the marriage. The defendant husband answered by denying the allegations of the complaint and sought a divorce on the ground that his wife was an habitual user of alcohol.
After a hearing ore tenus, the trial court granted a divorce to the plaintiff on the grounds set out in her complaint; awarded the custody of two minor girls to the plaintiff; ordered defendant to pay to plaintiff $125 per month for the support of each child and $50 per month as periodic alimony; allowed defendant certain prescribed visitation privileges with his children; ordered defendant to convey his interest in the household furnishings to plaintiff (except certain enumerated items of personal property which were to be retained by defendant); directed the parties to convey their respective interests in two automobiles to each other; required defendant to convey his interest in the marital home to plaintiff; required defendant to maintain in force and effect certain listed insurance policies for the benefit of plaintiff and the children; ordered defendant to satisfy a second mortgage on the home; and ordered defendant to pay to plaintiff $2,400 for her attorneys' compensation. From this judgment defendant appeals.
The issues on appeal are: (1) did the trial court err in awarding the custody of the two nine year old girls to plaintiff; (2) were the visitation privileges accorded defendant inequitable; (3) did the court err in awarding a divorce to the wife on the ground of cruelty; and (4) was the award of alimony, child support and division of property excessive in view of defendant's income.
The evidence shows that the parties were married in 1962, separated in 1976 and divorced in 1977. During the marriage the husband worked at Redstone Arsenal. He is a security guard and now has a base salary of $10,532 per year. However, he supplements his income by working overtime and has engaged in this practice for the past several years. In 1973 defendant received $10,410.63; in 1974 $11,191.27; and in 1975 $12,531.71.
The plaintiff wife works parttime as a typist for a court reporter, earning about $250 to $300 per month.
The bulk of the evidence presented at trial was directed toward the fitness of the parties to be custodians of the two young girls; moreover, this evidence centered on the part alcohol played in the lives of both parties to this proceeding.
Several witnesses, including the children and the defendant, testified that the wife drank alcohol (mainly beer) quite *Page 357 
frequently and on occasion would become intoxicated. The frequency of the instances in which the wife drank to excess was in dispute. On one hand, the husband stated that the wife's drinking had reached the point where it interfered with her household chores and rendered her incapable of looking after the children. Defendant even stated that plaintiff was a hazard to the welfare of the children in that when she was drinking she would smoke and would either pass out or go to sleep with a lighted cigarette in her hand thus creating the possibility of a serious fire. On the other hand, plaintiff's employer stated that she had been in the plaintiff's house at all hours of the day and night as well as having talked to the latter on the telephone during all hours and that she (the employer) had never seen or heard plaintiff when the latter was under the influence of alcohol. Plaintiff's employer further stated that plaintiff was a good housekeeper and was good to the children. Furthermore, she testified that it appeared to her that plaintiff loved the children and wanted to be a good mother. The children, however, stated that they wished to live with their father. The mother explained that the reason the children wanted to live with their father was because he had poisoned them against her. Plaintiff also testified that the father had tried to replace her in the children's affections and that he had told the children that they were not required to obey their mother.
In regard to his contention that the trial court incorrectly awarded custody of the children to his ex-wife, defendant argues that the court erred by placing the burden on him to prove that the wife was unfit.
At the beginning of the hearing the trial court said:
 "THE COURT: Tommy Baxter, [attorney for defendant] the only way you are going to get custody is to prove the mother to be unfit. If you can do that the Court will give consideration to it, and without substantial testimony in that regard you lose. Now, do you have such testimony?
. . . . .
 "THE COURT: . . . She is going to get the kids, I know that and both of you know that, unless he can prove that she is unfit. That is his burden. Why not let him seek to prove that at this time."
From this discourse it is quite obvious that the trial court considered the mother's unfitness to be decisive of the custody question.
To begin, the primary consideration in a child custody case is the best interests and welfare of the child. Rogers v.Rogers, Ala.Civ.App., 345 So.2d 1368 (1977). And, in deciding what is in the best interests of a child, a court is bound to consider the following principle of law:
 "Ordinarily where a child is of such tender age as to require the care and attention that the mother is specially fitted to bestow, the mother rather than the father is the proper custodian unless for some reason she is unfit for the trust." Burleson v. Burleson, 269 Ala. 637, 114 So.2d 887 (1959).
In the case at bar the two young girls were nine years old. The supreme court has held that nine year old children fall within the "tender years" doctrine. McBride v. McBride,268 Ala. 619, 109 So.2d 718 (1959).
However, defendant asserts that the above stated principle is inapplicable to this case since the children expressed a desire to live with him rather than with their mother. But we should add that the custody preferences of children are not controlling on the court, Patterson v. Patterson, Ala.Civ.App.,345 So.2d 1364 (1977), although such preferences are entitled to much weight. Rogers v. Rogers, supra.
The evidence of the relative fitness of the plaintiff and defendant to have custody of their two nine year old daughters is in sharp conflict and no good purpose would be served by rehashing their behavior, whether virtuous or blameworthy. Suffice it to say that unless we are convinced — and we are not so convinced — that the trial *Page 358 
court's award of the children's custody to the plaintiff is plainly and palpably erroneous, we are bound to affirm. Accordingly, we affirm the court's award of the custody of the two minor children to the plaintiff wife.
Defendant's next contention is that his visitation privileges are inequitable.
In settling visitation privileges, the trial court is accorded wide latitude and each case will be decided on its own peculiar facts. Lipham v. Lipham, 50 Ala. App. 583,281 So.2d 437 (1973).
In the present case defendant was given visitation two weekends out of each month; fourteen consecutive days in June, July and August of each year; and he and plaintiff are to alternate Thanksgiving and Christmas of each year. It is further provided in the decree that if visitation is not undertaken within the approximate time listed, such visitation period is forfeited.
Defendant complains that he works a swing shift and that he might not be able to pick the children up or return them as scheduled. The record does not convince us, as it obviously did not convince the trial court, that defendant could not make arrangements to have someone else pick up or return the children at the appointed times in the event that he was unable to do so. We find no error in that part of the court's decree which dealt with visitation.
Defendant's next objection to the trial court's decree concerns the award of a divorce on the ground of cruelty. He argues that there is no evidence in the record to support such a finding.
The trial court's decree divorcing the parties is based on three grounds, i.e. cruelty, incompatibility, and irretrievable breakdown of the marriage. And, there is ample evidence in the record to support the finding of incompatibility and irretrievable breakdown. Nonetheless, defendant argues that the decree should be reversed because one of the grounds, i.e.
cruelty, on which the divorce was granted was unsupported by the evidence. Without deciding initially the validity of defendant's argument, we consider the alleged error to be within the ambit of the "harmless error" rule found in Rule 61 of the Alabama Rules of Civil Procedure. As pointed out, the evidence amply supports the granting of the divorce on the grounds of incompatibility or irretrievable breakdown of the marriage and, as a result, the parties are divorced regardless of whether there is evidence of cruelty. Hence, we can perceive of no substantial injury to defendant.
Nevertheless, we think the cruelty ground is supported by the evidence.
The plaintiff testified as follows:
 "Q. Mrs. Stilwell, throughout the marriage and in particular beginning in 1972, and up until the time of the filing of your petition for divorce, until the time you were actually separated, were there — was your marriage characterized by frequent arguments, frequent —
"A. Screaming battles.
"Q. — discussions?
"A. Yes.
"Q. Screaming battles, you would describe them as?
"A. Yes.
 "Q. Will you tell the Court whether Mr. Stilwell was prone to use profanity to you, call you abusive names and so forth?
 "MR. BAXTER: We object to being repetitious, previously testified to.
"THE COURT: Overruled.
"Q. Go ahead.
"A. Yes. He calls me every name in the book.
"Q. Such as?
 "A. A whore; a slut; a bitch; a mother-fucker; a stupid, dumb-assed woman. Stupid idiot, Sherlock Holmes, and that's been on numerous occasions, any time he got mad, really.
 "Q. Is it your testimony that in the course of arguments between you and him that if he would lose his temper that generally speaking it would result in such abusive type language, is that what you are talking about?
 "A. Right. Not for just a few minutes, sometimes for weeks it went on. *Page 359 
 "Q. Was it frequently in the presence of the little girls?
"A. Right.
 "Q. Mrs. Stilwell, this suit, I believe was filed August 18th, 1976, and there was a restraining order and certain Pendente Lite relief granted to you at the time of the filing of the petition by Judge John Green. Are you familiar with the Pendente Lite order issued August 18, 1976?
"A. Right.
 "Q. In that order Mr.Stilwell was directed to remove himself from the premises at 4012 Shelby Avenue. And to remain away from those premises without your permission until further order of the Court, is that correct, is it not?
"A. Correct.
 "Q. And do you know approximately when the — Mr. Stilwell was served with a copy of the order? Was made aware of the order?
"A. 21st, I believe.
"Q. Was he served there at the home?
 "A. Well, let me state this: I told him — I took the children and took them to my sister's, because I didn't want them there when they served him with the thing.
 "Q. In other words, between the time the suit was filed and the time of service of the papers, you went to your sister's?
"A. Right.
 "Q. And then when you learned that the papers had been served, did you return there to Shelby?
 "A. No. Let me tell what really happened. I carried them down there when I knew they were fixing to serve him, because I didn't want the children there. And I came back, when I came back into town I called Bill on the phone to tell him that the children were all right and all this. And he had called the police, he said he had an APB out on me, he called the police, the sheriff, the FBI, anyway, he said that I was being looked for all over the place. I met him then out at where Shirley works. And I tried to talk to him, I really tried to talk to him. And I don't know, I was scared, quite frankly. I was afraid of him at the time. And then he was served, I believe the next — well, it was within two days, I think, from the time this happened."
In Ross v. Ross, 279 Ala. 50, 181 So.2d 491 (1965) the supreme court, when faced with a similar factual situation, said:
 "The evidence shows that for a long number of years there had been almost continuous quarreling between Mr. and Mrs. Ross, accompanied by threats on the part of Mr. Ross. True he had never committed actual violence on her. However, Mrs. Ross testified that Mr. Ross had a violent temper and she was afraid of him and that he was highly jealous and frequently accused her of unfaithfulness. On at least one occasion, if not two, Mr. Ross went in search of his wife with a gun. The weight of his explanation as to why he carried the gun on at least one search was primarily for the trier of fact.
 "Also primarily for the trier of fact was whether Mrs. Ross' departure from the family abode was because of a reasonable apprehension on her part of danger to her life or health. Assuredly, if a reasonable apprehension was harbored by Mrs. Ross, no rule of law would require her to await actual violence. As stated in Evans v. Evans, 1 Hag.Rep. 35:
 "`In a state of personal danger no duties can be discharged; for the duty of self preservation must take place before the duties of marriage, which are secondary both in commencement and obligation.'
 "In the present case we think the evidence sufficient to have warranted the chancellor's conclusions that because of the respondent's conduct the complainant was in reasonable apprehension of danger to her life or health, and further that legal cruelty was sufficiently established to warrant the decree in the premises. Particularly is this true in view of the presumption of correctness to be accorded the findings of the court below before whom the evidence was taken ore tenus."
Consequently we find no error in this aspect of the trial court's decree. *Page 360 
Defendant's final complaint is that the trial court erred in its award of alimony and child support and in its disposition of property.
We said in Self v. Self, 49 Ala. App. 665, 275 So.2d 345
(1973), that:
 "The amount of alimony to be awarded to the wife in a divorce case is addressed to the sound discretion of the trial court, Butler v. Butler, 274 Ala. 352, 148 So.2d 638, as is the amount to be paid for the support of the children, Whiteport v. Whiteport, 283 Ala. 704, 220 So.2d 891, and the exercise of such discretion will not be revised on appeal unless the court is deemed to be palpably in error. Davis v. Davis, 274 Ala. 277, 147 So.2d 828.
 "Cases in Alabama indicate an award of alimony to the wife alone should not exceed one-half of the husband's net income. Brady v. Brady, 144 Ala. 414, 39 So. 237. However, where children are involved the supreme court has affirmed awards exceeding one-half of the husband's net income. Whitfield v. Whitfield, 283 Ala. 433, 218 So.2d 146; Wells v. Wells, 230 Ala. 430, 161 So.2d 794; Rogers v. Rogers, 215 Ala. 259, 110 So. 140. However, each case must depend upon the facts and no mathematical formula can determine what is an appropriate award of alimony or child support."
In the present case the evidence showed that defendant's base pay before deductions was $405.72 bi-monthly or $10,548.72 per annum. However, his income tax returns for the years 1973, 1974 and 1975 showed earnings in excess of his base pay due to overtime work. In 1975 his earnings exceeded $12,000 per annum. There was also evidence that defendant had worked occasionally in businesses owned by his relatives. The amounts earned in these efforts were not revealed.
The court awarded $50 per month alimony and $250 per month child support. In addition, the court required defendant to keep in force certain medical and life insurance policies for the benefit of the plaintiff and the children. An additional expenditure of $16.80 per month was required by this aspect of the decree. Defendant was also directed to pay off a second mortgage on the house and this obligation entailed payments in the sum of $126 per month. This mortgage would be satisfied in ten to twelve months.
The total monthly expenditure required by the decree in addition to income tax payments, retirement, insurance, etc. was $442.80. Taking into consideration all of the expenditures required of the defendant, and the fact that his income could fluctuate between $12,000 and $15,000 per year depending on overtime worked at his regular job and the work performed for his relatives, defendant would have available for living expenses a monthly sum of $350 to $500.
Defendant had testified that his expenses would amount to about $500 per month. However, it should be noted that this sum includes the $126 second mortgage payment which will be paid off in about a year, plus a Master Charge account of $50 per month that will be paid in approximately seven months.
Moreover, defendant could, in order to reduce his indebtedness, sell some of his personal property such as his four-wheel drive International Travel-All or alternatively some or all of his large collection of guns.
In view of the circumstances mentioned above, we cannot say that the trial court is plainly in error in that aspect of the decree relating to alimony and child support.
As a final issue, defendant claims that the trial court erred in its disposition of the property. This argument is based on the fact that the court ordered that all household furnishings be given to the wife. The defendant retained all of his personal property. He was also ordered to convey his interest in the family home to plaintiff. There was an outstanding first mortgage on the property of about $6,000 which plaintiff was required to satisfy. One automobile was given to plaintiff and another vehicle plus the Travel-All were given to defendant. *Page 361 
The parties had been married fourteen years and the plaintiff was given custody of their two nine year old daughters. She was also given a divorce on the grounds of cruelty, incompatibility, and irretrievable breakdown of the marriage. Again, considering the length of the marriage, the causes of its breakup, and the responsibilities placed on the parties after the divorce, we are not prepared to hold that the trial court committed error in its disposition of the property.
No reversible error having been argued, the judgment appealed from is affirmed.
Plaintiff's motion to strike defendant's brief and to dismiss the appeal is denied.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.